**36 So.2d 704**

**PLUNKETT et ux. v. UNITED ELECTRIC SERVICE.**

No. 38119.

Jan. 12, 1948.

On Rehearing June 15, 1948.

Thompson & Thompson, of Winnsboro, and Blanchard, Goldstein, Walker &

O'Quin, of Shreveport, for defendant-appellant.

Hussey & Smith, of Shreveport, for plaintiffs-appellees and for intervenors-appellees.

HAMITER, Justice.

The residence of plaintiffs (John H. Plunkett and his wife), situated at Municipal No. 217 Boulevard Street in the City of Shreveport, together with its contents, was partially destroyed by fire during the early morning of December 25, 1943. For the loss sustained they were paid by the Louisiana Fire Insurance Company of Baton Rouge (insurer of the house) $6,677.28 and by the American Central Insurance Company of St. Louis, Missouri (insurer of the personal property) $2,000, the limit of its policy.

Thereafter, plaintiffs instituted this suit to recover damages from the United Electric Service, a commercial partnership domiciled in the City of Monroe, charging that the fire resulted from a central heating unit installed in the attic of their house by that defendant. They prayed for an award in the total amount of $14,815.78, subject to and with recognition of the subrogations given the insurers for the sums respectively paid to them, the claim being itemized as follows:

A. Damages to house and loss of use of occupancy thereof during reconstruction, $6677.28;

B. Value of furnishings, fixtures and personal property destroyed $6638.50;

C. Cost of moving from and to said house, inconvenience in being deprived of use thereof, lack of heat, and physical and mental anguish, $1500.00.

For a cause of action, plaintiffs alleged:

"That petitioners do not know the exact cause of the failure of said heating unit to properly function, but aver that if said heating furnace had been properly and carefully installed that same would have operated efficiently and would not have burned petitioners' said house, and petitioners further aver that the proximate cause of the fire which partially burned petitioners' house was the faulty installation or adjustment of said heating unit by said United Electric Service."

Joining plaintiffs in the suit, by way of intervention, were the mentioned insurers. Each asked judgment, under and by reason of its subrogation, for the amount of insurance paid.

In the answer defendant admitted the installation of the heating unit, denied that it caused the fire, and averred that it was installed with the utmost care and in a proper manner.

After a trial of the merits defendant was condemned to pay to the Louisiana Fire Insurance Company of Baton Rouge $6,098.15; to the American Central Insurance Company of St. Louis, Missouri, $2,000; and to plaintiffs, $1,000.

From the judgment defendant appealed. Answering the appeal were the Louisiana Fire Insurance Company of Baton Rouge and the plaintiffs, they praying that the judgment be increased in their favor, respectively, to $6,677.28 and $5,988.50.

In his well considered written reasons for judgment the trial judge correctly set forth the undisputed pertinent facts of the litigation as follows:

"In December of 1943, defendant entered into a verbal agreement with plaintiffs to furnish and install in plaintiffs' residence, for the price of $500.00, a central heating unit to replace the one then in the house which was considered of inadequate capacity. Plaintiffs' house was completed in February of 1941, and was originally equipped with air ducts and a vertical type furnace or heating unit which was located in a closet on the first floor. The one installed by defendant to replace it was a Lennox horizontal type gas furnace consisting of main unit (furnace), fan, motor and controls. In installing the unit, defendant connected the existing duct work in the house to a small new amount of duct work by defendant made necessary by the change in location of the heating unit. The furnace installed by the defendant burns natural gas to heat air which is distributed through the ducts to the various rooms of the house by a blower fan operated by a motor using electric current serving the house. Defendant extended the gas pipes from the first floor to the attic and extended the electric

wires in the attic, to connect both with the unit.

"Defendant, domiciled in Monroe, Louisiana, sent three of its employees to Shreveport and they did the work of installing the heating unit in the Plunkett home. No permit was obtained by defendant or any of its employees from the Building Inspector, the Plumbing Inspector or Electrical Inspector of Shreveport, nor was the work inspected by these officials as required by ordinance of the City of Shreveport. No pressure tests were made on the gas extension lines installed. . These employees of defendant began the installation work about three o'clock in the afternoon of December 22nd and completed the same and started the unit operating about 11 P.M. of the same date when they left the Plunkett home. On December 23rd, in the afternoon, Mr. M. E. Phillips, manager and engineer of the heating and air conditioning division of defendant's business, came to the Plunkett home, checked and approved the general installation of the unit and pronounced the unit to be working and operating satisfactorily. The unit continued to function thereafter until about ten o'clock of the night of December 24th, when the electrical current in the City of Shreveport was disrupted by rainy and freezing weather causing wires in the City to break under the accumulation of ice. The electricity servicing the Plunkett home was cut off and the house became very cold as the heat from the furnace was no longer con-

veyed into the lower part of the house by the electrically operated blower.

"The living quarters of the Plunkett home were on the lower floor. On the night of December 24th, practically the entire family was ill with "flu". Mrs. Plunkett had gotten up out of bed with her baby who was ill and gone into the kitchen where there was a gas range which she lighted for warmth. She says she sat in front of the range most of the night until about six o'clock in the morning of December 25th (Christmas), when she heard someone pounding on the front door and shouting. It was then discovered that the attic of the house was enveloped in flames and the Plunketts rushed from the building in night clothes and barefooted.

\* \* \* \* \* \*

"The evidence discloses that this heating unit is a manufactured product, but comes disassembled or broken down. It is assembled or put together at the time and place of installation. The mechanical controls thereon are set at the same time and place. All these things, together with the new gas and electrical extensions, were done in this case by defendant's employees. \* \* \*"

This brings us to a consideration of the issues in the case, the first of which is whether or not the fire started from the heating unit. Of course, appellees contend that it did. Defendant, in vigorously challenging that contention, insists that the

heating unit was perfectly designed and carefully installed and regulated. And it suggests possible reasons for the commencement of the fire, such as rats playing with matches and also spontaneous combustion in the mass of clothes and other personal property stored in the attic.

In resolving this issue of fact in favor of appellees, the trial judge commented that, "The evidence makes inescapable the conclusion that the fire started from the heating unit." With this conclusion we cannot disagree; the record fully supports it. Among the first to reach the scene shortly after the fire's commencement were Captain Turner J. Mangham and his assistants of Station No. 7 of the Shreveport Fire Department. Captain Mangham testified:

"Q. Captain Mangham, will you relate to the Court just what you did when you arrived at their residence at 217 Boulevard in the City of Shreveport on that date?

"A. Yes, sir. We had a telephone alarm to 217 Boulevard, house on fire. We came on down Centenary Boulevard and the other company laid hose and my company made up. On arrival we saw the fire coming out of the east end of the gable and the house was full of smoke, so we tried to make our entrance to get to the seat of the fire as quick as possible. We gained entrance through the front door and went to the little hallway, which is usually an easy place to get into the attic. You could tell most of the fire seemed to be coming from the attic. We made entrance with a two and a half

inch line with a one and one-eighth inch nozzle through the opening for the attic ventilator fan; found most of the fire to our right, the north side of the house, most of the seat of the fire, around a heating unit installed in the attic. Closets below and under were also involved in fire. We put out the large portion of the fire, found escaping gas, ordered gas meter cut off, checked and put out the remaining fire, which was mostly around that section. I think that covers it very well."

Further, he testified:

"Q. Was this one of the cases where there was any doubt in your mind as to what caused the fire?

"A. All indications pointing to the start of that fire settled my mind beyond a reasonable doubt that it started around that heating unit and was caused from that heating unit.

"Q. Did you find anything in any part of the building that indicated to your mind that the fire could have been caused by anything else other than the heating unit?

"A. No, sir, I did not."

Accompanying Captain Mangham into the burning house were firemen C. A. Freeman and Homer G. McDowell, both of whom were also from Station No. 7. They likewise found the seat of the fire to be around the heating unit and observed nothing other than that instrumentality to which the blaze could be attributed.

Others entering the house and finding the seat of the fire to have been around the heating unit were Messrs. Robert Neff and C. I. Ford, both of whom made inspections a few hours after the occurrence of the damage. The former originally constructed the building and rebuilt it after the burning; the latter, whose business is that of adjusting insurance claims, adjusted the losses for the intervening insurers herein.

Having concluded that the heating unit was responsible for the fire, we turn now to determine if appellees have proved specific negligence on the part of defendant in installing it. Their counsel maintain that it has been sufficiently proved, arguing that the evidence establishes that the fire was caused by a failure to properly coordinate the gas valve of the furnace with the electric current; or by the making of a faulty connection of the gas pipe into the furnace; or, by leaving a loose connection along the gas line, installed by defendant's employees in the attic, a few feet from the unit. There was evidence adduced, it is true, tending to show that each of the mentioned acts of negligence might have been committed; but, according to our appreciation of the record, none was proved with legal certainty.

■ This makes necessary a consideration of the litigation in the light of the doctrine of res ipsa loquitur, relied on alternatively by appellees and applied by the district court in rendering its decision. This doctrine furnishes a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. Gerald et ux. v. Standard Oil Company of Louisiana et al., 204 La. 690, 16 So.2d 233. It is appropriate in a case where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and further where the accident is of the kind which ordinarily does not occur when due care has been exercised. In such a case the plaintiff need neither allege nor prove the particular acts of omission or commission from which the accident resulted. The accident itself, according to the rule, creates an inference of negligence, and to escape liability the defendant must rebut and overcome the inference. Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976; Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Hake et al. v. Air Reduction Sales Company, 210 La. 810, 28 So.2d 441.

■ In determining the applicability of the doctrine the courts often resort to the possession test, i. e., whether or not the instrumentality allegedly causing the accident was at the time in the exclusive possession and control of the defendant. A. & J., Inc., v. Southern Cities Distributing Company, 173 La. 1051, 139 So. 477; Jones v. Shell Petroleum Corporation et al., 185 La. 1067, 171 So. 447; Davis v. Teche Lines, Inc., 200 La. 1, 7 So.2d 365.

. . But the fact of possession and control by the defendant is not always an essential element. The doctrine has been held to be applicable in numerous actions where the offending articles were not possessed and controlled by the defendants on the occurrence of the accidents, such as those for damages resulting from exploding bottles of carbonated beverages, from leakage of drums of acid, and from the blowout of a plug in a cylinder of acetylene gas. Important though in actions of this class is that the plaintiff prove freedom of fault on the part of all through whose hands the instrumentality passed after it left the defendant. Motor Sales & Service, Inc., v. Grasselli Chemical Co. et al., 15 La.App. 353, 131 So. 623; Auzenne v. Gulf Public Service Co., La.App., 181 So. 54; Auzene v. Gulf Public Service Co., La.App., 188 So. 512; Lanza v. De Ridder Coca Cola Bottling Co., La.App., 3 So.2d 217; Meyers v. Alexandria Coca-Cola Bottling Co., Ltd., La.App., 8 So.2d 737; Ortego et al. v. Nehi Bottling Works et al., 199 La. 599, 6 So.2d 677; Hake v. Air Reduction Sales Company, supra.

■ In the instant case, which appears to be similar in principle to the actions of the last mentioned class, the heating unit placed in plaintiffs' home by the defendant concedingly was of the kind that does not ordinarily set fire to a building when due care has been exercised in installing it. Too, plaintiffs cannot be expected to have the information regarding its installation that defendant is assumed to possess. On the other hand, at the time of the fire the unit was in plaintiffs' home and under their control and management. From all of which, and in keeping with the above authorities, it follows that the doctrine of res ipsa loquitur is applicable here if it has been proved that plaintiffs were in no manner negligent in their control, management and operation of the unit.

Respecting this issue, defendant contends that since the system was functioning perfectly when its engineer left the premises approximately 39 hours before the fire Mr. Plunkett must have tampered with the controls of the unit to obtain more heat. In rejecting this contention, as well as in holding the doctrine applicable, the trial judge commented: " * * * This Mr. Plunkett says he did not do and so does Mrs. Plunkett. We accept their testimony as true. Why would Plunkett want to turn up the gas in this furnace in the attic after the City electric current had failed and stopped the blower fan, the only means to get the heat to the lower floor? Obviously, no additional heat could be thus secured."

■ The record furnishes no good reason for our refusal to approve this finding of fact. Especially is this true since the trial judge was in a much better position to pass upon the integrity of plaintiffs than are we.

■ Therefore (the doctrine of res ipsa loquitur being applicable), defendant, to escape liability herein, carried the burden

of overcoming the inference of negligence on its part that was created by the occurrence of the fire. To do this it showed that after the installation certain tests, on two different occasions, were conducted by its engineer and its employees which disclosed no defects in the system. Admittedly, however, it did not secure an inspection, together with a pressure test, of the gas line which its employees extended into the attic as is required by ordinance to be made by the plumbing inspector of Shreveport. And in this connection, according to the record, the firemen on entering the attic of the house found there burning gas being emitted from the extended gas line, some six or eight feet from the unit, which was described as either broken or containing a loose connection. Furthermore, as we appreciate the evidence, defendant's engineer and employees did not test the unit with the electric service disconnected, which omission becomes seemingly significant when it is remembered that the fire occurred while the electric blower was not in operation due to a disruption of the electric service to the house.

Had these last mentioned two tests, together with the ordinance required inspection, been carried on, very probably plaintiffs' house would not have been burned. And because of the omission of defendant in these respects we are compelled to agree with the district court that its burden of overcoming the inference of negligence has not been discharged.

As to the quantum, the awards made seem to be neither excessive nor inadequate. Further, in making them the trial judge thoroughly and correctly analyzed the evidence as follows:

"The fire insurance policy on the house is not in evidence. Although Louisiana Fire Insurance Company paid plaintiffs $6,677.28, the house was rebuilt by Robert Neff, contractor, under a contract (P-4) calling for the 'complete restoration * * *, removing and replacing all burned materials, removing all discernible signs of fire and water damage,' for which the sum of $6,098.15 was paid. The evidence does not account for the difference. We think the insurance company can only recover the latter sum.

"The policy on the personal property is not in evidence. American Central Insurance Company paid plaintiffs the full amount of the policy, to-wit: $2000. Mr. C. I. Ford testified that he checked the items of personal property and was satisfied that the loss was sufficient to absorb the entire amount of the policy. The company is entitled to recover this amount.

"Plaintiffs' claim in item 'A' damages for 'loss of use of occupancy during reconstruction,' but the evidence shows that plaintiffs moved into the home of plaintiffs' sister after the fire and remained there until they reoccupied their rebuilt home and paid no rent. There is no proof to support a judgment for this claimed loss.

"For the personal property destroyed, plaintiffs' claim in item 'B' the sum of $6,638.50 or $4,638.50 more than the amount paid them by American Central Insurance Company. We think the proof in this regard unsatisfactory and too indefinite to support a judgment in excess of the $2000 which is adjudged to the subrogated insurance company.

"Finally, plaintiffs claim $1500 for inconvenience in being deprived of use of their home, for physical and mental anguish, etc. Without doubt, plaintiffs were greatly inconvenienced and suffered much physical and mental anguish in the damage to their new home and being forced therefrom barefoot and clad in night clothes, exposed to the ice and cold of the outside in the early morning hours when they and their children were ill with flu and threatened with pneumonia or other complications. Such things are not susceptible of exact proof in damages, but they are nonetheless real injuries for which damages should be allowed. Plaintiffs were out of their home some two and one-half or three months. Fortunately, the evidence does not suggest that the illnesses in the family were aggravated or prolonged by their terrible experience. In such cases the Court must exercise its discretion in fixing the damages and we think the sum of $1000 to be fair and adequate."

The judgment is affirmed.

McCALEB, J. dissents, being of the opinion that the doctrine of res ipsa loquitur is without application to this case.

HAWTHORNE, J., concurs in the decree except insofar as it affirms that portion of the judgment of the lower court awarding damages to the plaintiffs for inconvenience, being of the opinion that the damages allowed are excessive. From this portion he dissents.

On Rehearing.

McCALEB, Justice.

A rehearing was granted herein in order to reconsider our ruling respecting the application of the doctrine of res ipsa loquitur. However, counsel for defendant have devoted much of their reargument to a critical analysis of the findings of fact. They maintain that we erred in approving the conclusion of the district judge that the fire was attributable to the heater installed in plaintiff's attic by their client, asserting that the judge merely assumed that such was the fact without any believable evidence in support of his finding.

In view of the earnestness of counsel, we have re-examined the evidence in the case and conclude that the trial judge was fully warranted in his holding that plaintiff has established with reasonable certainty that the heater, which had been installed in the residence by defendant some 39 hours

prior to the fire, was the sole and only cause thereof. It would be inutile for us to discuss the testimony as it has been fully analyzed in our former opinion wherein we have quoted extensively and approvingly from the decision of the trial judge.

Since we believe that the plaintiff has successfully demonstrated that the heater originated the fire, does it logically follow that fault on the part of the defendant, as the vendor and installer of the instrumentality, is to be inferred? This question has been answered in the affirmative in our original opinion where we concluded that, even though the heater was not in the possession of the defendant at the time of the damage, the rule of res ipsa loquitur was nonetheless applicable inasmuch as plaintiff had established that no one had tampered with or attempted to manipulate the heater from the time it was installed by defendant's agents until the time of the fire, some 39 hours later. In resolving thus, we rested our decision on a similarity between the facts presented here and those in cases involving damages resulting from exploding bottles of carbonated beverages, leakage of drums of acid and the blowout of a plug in a cylinder of acetylene gas. See Hake et al. v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441 and other cases cited in the original opinion.

A reconsideration of the rationale of our former decision has strengthened our conviction of the correctness of the views there expressed.[1] The only reason suggested for denying res ipsa loquitur in this case is that the plaintiff is supposed to have had control of the heater, the general rule being that the doctrine applies only when the defendant is in charge of the thing which does the damage. One reason why this argument cannot be maintained is that the matter falls within the exception made in cases of exploding bottles or other substances in sealed containers. Another reason why the contention must fail is that it is not correct to say that the heater was under plaintiff's control at the time of the damage. Consider the facts. Plaintiff buys a gas burning heater from defendant who installs it in plaintiff's residence and warrants, impliedly at least, that it will satisfactorily perform the function for which it is purchased. However, less than two days from the time of its installation and without any act by plaintiff, it starts a fire which causes grievous damage to the house. Can it be fairly said in these circumstances that plaintiff, and not defendant, has control of the instrumentality that caused the damage? Or is it more in keeping with common sense and plain justice to hold that, in the nature of things, the heater would not have caused the fire if it was functioning properly and that plaintiff cannot be expected to know whether it was defectively constructed or installed whereas defendant, as seller and installer, is fully able to show a freedom from negli-

[1] The writer of this opinion has been converted to this view.

gence? We think the questions answer themselves. It must be remembered that, in cases like this, (unlike most instances where res ipsa loquitur is invoked) the plaintiff does not obtain the benefit of the doctrine by merely showing the unusual accident and the resulting injury. On the contrary, plaintiff is required to establish with certainty that the instrumentality installed by defendant is the source of the damage; that he was without fault and that the time elapsing between the installation and the damage was such as to make it reasonably evident that the damage would not have been caused if the device had been free from defect and had been properly installed. However, when all of these elements are proven, we see no good reason for not requiring the defendant to show freedom from negligence as then it is fair to assume that the accident would not have occurred but for a faulty installation or defect in the heater.

Application of res ipsa loquitur to matters of this kind is not without precedent in other jurisdictions. For a parallel case see Candler v. Automatic Heating, 1929, 40 Ga.App. 280, 149 S.E. 287. In fact, our conclusion is conformable with the "tendency of modern courts to extend the principle to an ever broadening line of cases". Shain on "Res Ipsa Loquitur" page 438.

Counsel finally assert that we were in error in failing to hold that the defense evidence is sufficient to exhibit a freedom from negligence. This question is one of fact which was resolved against defendant by the trial judge. In our original opinion, we discussed the evidence in detail and concluded that the judge did not err in his resolution. After a careful re-examination of the testimony, our view is unchanged.

Our original opinion and decree herein are reinstated as the final judgment of this court.

HAWTHORNE, Justice (dissenting).

This court said in Hake et al. v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441, that there are cases involving a certain type of accident wherein the matter of possession in the defendant is not an important consideration. Those cases were actions for damages resulting from exploding bottles of carbonated beverages and from leakage of drums of acid. In those cases, however, there was no question whatever as to the instrumentality causing the damage, and no question that from the circumstances of each case the accident was such as would not ordinarily have occurred unless there had been negligence on the part of the defendant, and accordingly the doctrine of res ipsa loquitur was applied.

In my opinion, in those cases in which possession is in the plaintiff, the courts should demand the strictest proof that the instrumentality of the defendant caused the damage. The proof in the instant case is certainly not conclusive that the fire was caused by the heater. The most that can be said of the proof from a summation of all

the witnesses' testimony regarding the cause of the fire is that in their opinion the heater must have caused the fire because they could not attribute the fire to any other cause. An examination of the evidence shows that every witness who testified on this point concluded that the heater caused the fire because the attic of plaintiffs' house was charred most in the area around the heater, which I consider is only circumstantial, and not conclusive, evidence that the fire was caused by the heater. This case, therefore, is not a proper one, in my opinion, for the application of the doctrine of res ipsa loquitur.