HARDY, Judge.
Plaintiff brought this suit seeking to recover the sum of $31,651 in the nature of personal injuries sustained in an accident which occurred on December 1, 1947, allegedly as the result of the negligent operation of a winch truck and its equipment by the defendant, Kennedy, whose liability insurer is joined as a party defendant. After trial there was judgment in favor of defendants rejecting plaintiff’s demands, from which plaintiff prosecutes this appeal.
With a few exceptions, to which attention is hereafter particularly called, the facts are without dispute. Plaintiff is a skilled mechanic and is the owner of welding equipment, which, on occasions, he rents to other parties. On or about the date of the accident a large White tandem truck belonging to the Latex Construction Company and driven by its employee, Marion D. Kennedy, which truck was loaded with heavy machinery, while en route from the City of Baton Rouge, became disabled while passing through the City of Alexandria. Necessary repairs were effected by one William H. Smith, the operator of a heavy equipment repair shop, in the course of which work plaintiff’s welding equipment had been used. Upon completion of the repairs, sometime late in the afternoon of December 1st, plaintiff removed his welding equipment to his shop or storage space. While on his waj' to his home plaintiff found that the Latex truck had, in some manner, been driven off the highway into a ditch on Masonic Drive in the outskirts of the City of Alexandria, and he stopped for the purpose of offering whatever assistance he might be able to render. Plaintiff was requested by the driver of the truck to contact some operator of wrecking equipment who would be able to extricate the truck from the ditch. Pursuant to this request plaintiff telephoned several operators, without success. Entirely by coincidence, it was discovered that the defendant, Kennedy, was at the home of one of the parties whom plaintiff called, a Mr. James Guinn, to whom he was exhibiting his new winch truck and equipment which had been delivered to him only that morning. In response to Lockwood’s request the defendant, Kennedy, proceeded to the location of the stalled truck. At the scene several parties, who had interested themselves in the effort to extricate the truck, were present, namely, the plaintiff, Lockwood, William H. Smith, at whose shop the repairs on the truck had been made earlier in the day, the defendant, Pat C. Kennedy, and, of course, the driver of the Latex truck, Marion D. Kennedy.
After surveying the situation, the attempt was made to pull the truck out of the ditch by attaching a chain to the winch truck, but this effort was in vain, due to the fact that the winch truck was too light to permit of the necessary traction.
At this point it is necessary to describe in some detail the equipment which was being operated by defendant. The winch truck, consisting of a cab and a platform body on which was mounted a motor-driven winch, as has been observed above, was new equipment and had been delivered to defendant only on the morning of the day of the accident. The winch, driven by the motor of the truck, was fitted with a steel cable running from the drum of the winch through a pulley or block at the apex of an “A” frame. The end of the cable was equipped with a large hook which was customarily affixed to a device known as a rolling tailboard, at the rear of the truck. The “A” frame referred to consisted of two hollow pipes some 20 feet in length, more or less, arranged in the shape of an inverted “V” affixed at the base to each side of the frame of the truck and fastened at the apex with a pin which was secured to the block or pulley, through which ran the cable. The pipes, or gin poles, were supported in position with long chains, one or more, laced at the apex of the gin poles. The elevation of the frame was controlled by reeling the cable in or out, in which operation the hook end of the cable attached to the rolling tailboard served as an anchor. Thus, the *179 operator of the machine, by means of clutch and gear, could raise or lower the frame to the desired angle, dependent upon the degree of leverage required for any particular operation. When the proper elevation was obtained the chains were tightened, thus providing a fixed support for the frame, and the equipment was then rigged and ready for loading, hoisting or pulling operations. It is thus to be seen that the equipment was similar to a mobile derrick or crane.
One of the serious conflicts of testimony occurs with respect to the next step of the operation in the effort to disengage the Latex truck. Plaintiff, supported by one of his witnesses, insists that the defendant, Kennedy, requested him to climb the “A” frame, disengage the pulley or block and free the cable therefrom, thus permitting the cable to be operated in a straight, horizontal pull from the winch. Obviously, the freeing of the cable was necessary since the hook could not pass through the pulley. It is established that there are two methods of effecting this operation. The first and safer procedure is to lower the gin poles until they are in,a horizontal position, thus permitting the release of the' pulley and the disengagement of the cable. The second and more dangerous, though quicker method, is to have someone climb the gin poles to the apex, release the block and disengage the cable. The latter is the method that was used in the instant case and defendant, Kennedy, contends that it was determined upon after a sort of found table discussion by the several interested parties'present at the scene.
In any event, Lockwood climbed the gin pole and, upon reaching the apex of the frame, called to the defendant to give him some slack in the cable. Defendant complied by throwing the winch into gear and engaging the clutch, at which instant the entire “A” frame collapsed, precipitating plaintiff to the pavement some 12 or 15 feet below and inflicting serious and permanent physical injuries.
The cause of the collapse of the frame is unknown. .Numerous theories are advanced by several of the witnesses, but careful study of the record fails to disclose any explanation which may be substantiated by any reasonable degree of certainty. It is established that after the collapse one of the links of one of the support chains was found to be opened and it may reasonably be assumed that the failure of this weakest link in the support chains was responsible for the collapse of the frame.
However, the Court is not confronted with the necessity of determining the exact nature of the failure of the rigging, but it is incumbent upon us to make pronouncements as to the negligence, vel non, of the defendant, Kennedy.
Plaintiff alleges various counts of negligence, all upon information and belief, which may be briefly summarized as follows :
1. The improper operation of the control levers and clutch, causing the winch to be thrown out of gear with the consequent release of the heavy “A” frame.
2. That the frame was released with such speed by the negligent operation of the machinery as to cause the breaking of the support chain.
3. That the support chain was broken before the cable was slackened, and, as a result, failed to support the frame.
4. Generally, that the defendant, Kennedy, was inexperienced in the control of the winch and his negligent operation caused the breaking of the support chain and the consequent collapse of the frame.
Further material facts which we find to be established by the record are that both the plaintiff, Lockwood, and defendant, Kennedy, were gratuitously engaged in the undertaking which led to the accident and no expectation of compensation appears to have entered into the consideration on the part of either. As pointed out, defendant Kennedy’s trucking equipment was new, and, according to the vast preponderance of the evidence, was properly rigged in accordance with one of a number of accepted method?. The. support chains were three-eighths inch. No evidence of any known ,or existing defect in any of the equipment is established.
*180 With respect to the several counts of negligence above enumerated, it suffices to observe that plaintiff has failed to establish any of them. Plaintiff freely admitted that he did not know the cause of the accident. At the time the rigging collapsed he was stretched out along one of the gin poles at the apex of the frame with his back to the cab in which defendant, Kennedy, was operating the levers and gears by which the winch was set in motion.
In view of plaintiff’s inability to assign or establish any explanation as to the cause of the accident, he invokes the doctrine of res ipsa loquitur.
As we have observed, irrespective of the cause of the accident, the principal point at issue concerns the question of negligence on the part of the defendant, Kennedy. Such negligence, in order to justify recovery by plaintiff, must be established by a preponderance of the evidence either as to some act of commission, that is, an active negligence, or the proof of some omission, a passive negligence involving the failure of the performance of some duty or the taking of some precaution. It must be borne in mind that the measure of negligence, the degree thereof, is also affected by the relationship existing between the parties at the time of the accident. The mere occurrence of an accident does not of itself serve to establish the existence of negligence.
In the instant case we are convinced beyond any doubt that plaintiff has failed to affirmatively establish any showing of negligence on the part of defendant, Kennedy. The testimony overwhelmingly preponderates to the effect that the new equipment was properly rigged with materials of reliable strength and quality and no latent defects were shown to exist. The attempt to show negligence in defendant Kennedy’s operation of the winch has utterly 'failed. The only testimony on behalf of plaintiff is based upon speculation, conjecture and surmise, and is completely overcome by the direct and positive testimony of the defendant, Kennedy. Additionally, we observe that the charges of lack of experience directed against the defendant, Kennedy, were not established, and, on the contrary, it was affirmatively shown that Kennedy was an experienced operator. A further established fact in this connection is that the motor winch was of a type which would not permit the free running of the cable off of the drum and through the pulley in such manner as would give the sudden slackening of the cable. On the contrary, it is conclusively shown that the cable would have played out very slowly. This fact eliminates the contention that the sudden, violent and uncontrolled running out of the cable was responsible for the collapse of the frame.
In the absence of any proof of active negligence, the plaintiff, as a consequence, is relegated to a reliance upon the applicability of the doctrine of res ipsa loquitur for any hope of recovery.
Pretermitting a discussion of the propriety of the application of the doctrine, as to which we have grave doubt under the pleadings and the facts comprehended in the instant case, we proceed to a discussion of the essential principles and elements of the doctrine as revealed by the record before us.
Briefly, analyzing the requirements which are indisputedly necessary to the success of' plaintiff in his invocation of the doctrine, it is essential, first, that plaintiff fulfill the obligation of proving as a fact that the agency or instrumentality causing the injury was under the exclusive custody and control of the defendant at the time of the accident, and, second, that plaintiff establish facts which evidence some negligence, either express or reasonably to be implied, on the part of defendant.
In considering the question of control the relationship of the parties is of some considerable importance. Plaintiff’s status as an employee, invitee or licensee must be determined, both with respect to its bearing upon control and upon the degree of care imposed by law upon the defendant.
We have been unable to find any case involving facts indentical with the instant matter. Clearly, there was no employment under the facts of this case for *181 the undertaking appears to have been entirely gratuitous on the part of both plaintiff and defendant. Nor was plaintiff invited by the defendant to participate in the venture. Quite the opposite, since the facts are uncontradicted on the point that defendant was solicited by plaintiff to engage in the operation.
The established facts indicate that plaintiff, Lockwood, and defendant, Kennedy, were engaged in a joint venture, to-wit, an effort, comporting with what appears to be a commendable mutual assistance custom among the trucking fraternity, to restore a disabled vehicle to operational status without any purpose of obligation, compensation or remuneration. In this enterprise Lockwood and Kennedy were collaborators, each apparently of equal authority. The accident transpired as the result of a voluntary action on the part of Lockwood, a skilled mechanic, who appears to have taken the lead in the effort to extricate the Latex truck. By reason of his recognized expert ability and experience, it is evident that Lockwood’s opinions were accorded considerable, if not controlling, weight in the enterprise. Under these circumstances it cannot be concluded that the operation was under the exclusive control of the defendant, Kennedy. However, inasmuch as Kennedy was in control of the actual mechanical operation, it may be conceded, arguendo, that he should be considered as having control and management of the instrumentality which caused the injury.
However, at best, the legal status of plaintiff, Lockwood, can be regarded as nothing more than that of a licensee. In Mercer v. Tremont & G. Ry. Co., La.App., 19 So.2d 270, in which case certiorari was denied by the Supreme Court, we had occasion to discuss this point at some length. The principle is well established that the owner of a property is under no greater duty to a licensee than that of refraining from wilfully or wantonly causing him injury. Certainly in the instant case there is not the vaguest shadow of support for the conclusion that defendant, Kennedy, was guilty of any wilful or wanton act.
The doctrine of res ipsa loquitur was discussed by this Court at length in the Mercer case, supra, and in the comparatively recent case of Anderson et al. v. London Guarantee & Accident Co., Ltd., La.App., 36 So.2d 741, 745, certiorari denied by the Supreme Court on November 8, 1949.
Reiterating the conclusions at which we arrived’ in the cited cases which’ are applicable to the instant matter, it is observed that in the Anderson case we made the following statement: “An essential element in the application of the doctrine of res ipsa loquitur is a showing that a defendant failed to use proper care as to the instrumentality under his control.”
There is no such showing in the case before us. Conceding, as was done in the Anderson case, that the accident was caused by an agency under the control of the defendant, Kennedy, plaintiff has failed to show any act of commission or omission constituting negligence on the part of said defendant and, certainly, it could not even be contended that any evidence :has been adduced which would fix liability upon the defendant’ by reason of his violation of his obligations to plaintiff, a mere licensee, whiqh legal obligations require simply a showing of the lack of wilful or wanton infliction of injury.
The evidence in the record has conclusively established the fact that defendant Kennedy’s truck had been newly equipped with the winch, the “A” frame, and other necessary appliances by the Lufkin Foundry & Machine Company of Lufkin, Texas. The rigging of the truck with a new steel cable and new support chains was performed by an experienced employee on the very day of the accident, and the testimony of a number of witnesses to the effect that the truck was properly equipped and rigged is uncontradicted. In view of these facts it cannot possibly be concluded that defendant Kennedy is chargeable with any negligence, either active or passive, with respect to any defects in the equipment which might have caused the accident.
With reference to the operation of the winch, the testimony is also conclusive that theré was no careless nor negligent *182 operation on the part of Kennedy which could have caused the collapse of the frame.
We have carefully examined the authorities cited by distinguished counsel for plaintiff, but find nothing which would alter the conclusions at which we have arrived based upon the reasons set forth. The facts are obviously at variance with those of the instant case. Certainly, the case of Plunkett et ux. v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R. 2d 1437, is easily to be distinguished.
It is noted in brief of counsel for plaintiff that issue is taken with the pronouncements of this Court in the Anderson case, supra, and statement is made in brief that no application for certiorari was made. This statement is inadvertent error, and, in our citation of the case supra, we have called attention to the fact that certiorari was refused by the Supreme Court on November 8, 1949. Clearly this action of the Court is equivalent to the approval of the principles enunciated by us in our opinion, which principles, we think, are clearly controlling under the facts developed in the instant case.
The learned Judge of the District Court expresses his final conclusion in these words: “I am, therefore, of the opinion that under the facts of this case there is no presumption of negligence on the part of the defendant which arises from the happening of this accident. However, assuming that the presumption does arise, I am of the opinion from the evidence that it was adequately met and fails to show that there was any negligence on the part of the defendant.” With this expression we are in full and complete accord.
It is noted that the judgment in this case, in addition to rejecting plaintiff’s demands, further provides for judgment in favor of the defendant, Pat C. Kennedy, against the National Mutual Casualty Company in the sum of $500 as attorney’s fees and carries a further provision that said amount be increased by an additional $100 in the event of appeal and hearing before this Court. No appeal was taken from these specific decrees by the defendant insurer, nor has any objection to the allowance been advanced before this Court, and it is therefore to be assumed that the parties are in agreement.
For the reasons set forth, the judgment appealed from is affirmed at appellant’s cost.