HOOD, Judge.
This is an action for damages instituted by Charles PI. Martin, individually and in *284 behalf of his minor daughter, Niesa Martin, based on physical injuries sustained by the said Niesa Martin when a horse she was riding failed to clear a wire fence which had been constructed by defendant, P. A. LeBlanc, Sr. The suit was instituted against LeBlanc and his public liability insurer, State Farm Insurance Company. After trial on the merits, judgment was rendered by the trial court in favor of defendants, and plaintiff has appealed.
During the year 1961, and for several years prior thereto, defendant LeBlanc owned a tract of land located near the City of Lafayette, having a frontage of 1,021.5 feet on the south side of Churchill Drive by a depth of 167 feet. This tract was completely enclosed by a fence, and prior to January, 1961, LeBlanc used the property solely as a pasture for a horse owned by his son and for cultivating and raising a vegetable garden. There were no buildings or structures on this property, except that an old railroad boxcar used for storage purposes was located near the southeast corner of it. Also, located on the property were three rows of wooden posts, all of which ran in a north and south direction across the full 167-foot depth of the tract. These posts extended about 5 feet above the ground and were from 12 to 20 feet apart. The three lines formed by these posts were so located that they divided the property into'four tracts of about equal size, the easternmost line of posts being parallel to and about 206 feet west of the east line of the property. The railroad boxcar was located near the south boundary of this tract of land, directly on the easternmost line of posts, a portion of the boxcar being east of that line of posts and the remainder extending west of it.
In December, 1960, Martin purchased a horse for his children to ride. A few days thereafter LeBlanc agreed that the horse could be pastured on this tract of land with his son’s horse, and in consideration therefor Martin agreed to construct feeding stalls for the horses and to see that both horses were fed and watered daily, the cost of the feed to be shared equally by both parties. Pursuant to that agreement Martin’s horse was pastured on this tract of land from and after the early part of January, 1961, and Martin completed the construction of the feeding stalls during the early part of February of that year. Martin’s 14-year-old daughter, Niesa, then went to this pasture and rode her father’s horse frequently from the time the horse was placed in it until the accident occurred on March 23, 1961.
Each year, for a number of years prior to the accident, LeBlanc had fenced off a portion of his land in the spring and had raised a vegetable garden in the enclosure, removing the fence after the garden was completed and abandoned. On March 23, 1961, pursuant to that custom, LeBlanc constructed a fence along the easternmost row of posts on this tract of land, the purpose-of the fence being to keep the horses off the east end of the property where he intended to raise a garden that year. One portion of the fence extended from Churchill Drive, thence running south along the above-mentioned row of posts to the north side of the railroad boxcar. That part of the fence was constructed of old hogwire, about 4 feet high, which wire had been used in previous years for the same purpose, and the fence was constructed simply by tacking or stapling this wire to the existing posts. The remaining portion of the fence, consisting of two strands of barbed wire, extended from the south side of the boxcar, thence running south to and adjoining the fence which ran along the south line of the property.
About 4:30 or 5:00 p. m. on that day, March 23, 1961, plaintiff’s daughter, Niesa, and two of her neighborhood friends, Barbara King and Johnnie King, went to the LeBlanc pasture to ride Niesa’s horse. While that horse was being saddled, Niesa and her friends were joined by defendant’s 17-year-old son, Pierre LeBlanc, Jr., who also saddled his horse, and all four of these young people then proceeded to ride the two horses in the enclosed pasture. Niesa, *285 Barbara and Johnnie King had alternated in riding the Martin horse, Niesa having taken at least two turns at riding the horse around the pasture before again mounting it for the last ride which terminated in the accident. About 45 minutes after they began riding the horses, and while Niesa was on her own horse, the horse beg'an running very fast in an easterly direction. Although Niesa tried to bring the horse to a stop she was unable to control it, and finally upon reaching the fence which LeBlanc had just constructed the horse attempted to stop or to jump the fence, but was unsuccessful in doing either, and instead the horse fell against the fence, throwing Niesa to the ground on the east side of the fence, causing the very serious and permanent injuries which form the basis for this suit.
Plaintiff contends primarily that Le-Blanc was negligent in constructing a fence which was not plainly visible across a path which the horses were accustomed to take, without informing plaintiff or his daughter of the fact that such a dangerous obstruction had been placed on the property.
The evidence is conflicting as to whether the wire used in constructing this fence was difficult to see at a distance of over 25 or 30 feet from it. The trial judge in his reasons for judgment, however, stated that he “visited the scene of this occurrence and upon approaching the gate on Churchill Drive the fence in question was readily seen and could be easily seen by a person going onto the property for the first time.” This gate was 87 feet from the newly constructed fence. We cannot say that the trial judge erred in arriving at that conclusion.
There was some testimony to the effect that the horses frequently walked around the east end of the railroad boxcar in going from the watering trough to their feed stalls. The path which they followed in going around the boxcar did traverse the newly constructed fence line at about the point where the accident happened. We, however, find nothing in the evidence to indicate that such a path was customarily-followed by the horses while they were being ridden. In this instance the horses had been ridden for the better portion of an hour immediately prior to the time the accident occurred, and certainly they had not gone around the east end of the boxcar on that day, because the recently constructed fence would have prevented them from doing so. We think the evidence fails to show that the fence was constructed across a path which the horses customarily used while being ridden in that pasture.
There is a conflict in the testimony as to whether LeBlanc, prior to the accident, specifically informed Niesa of the fact that he had constructed the fence which was involved in this accident. LeBlanc testified that he and his son were completing the erection of this fence when Niesa and her friends arrived at the pasture, that he then immediately called Niesa to the fence, informed her of the fact that it had been erected that day, and he specifically pointed the fence out to her at that time, before the horses were even saddled. LeBlanc further testified that a few minutes later, while the horses were being saddled, he called Niesa to the south side of the boxcar and showed her the two-strand barbed wire fence which he had placed there, pointing out to her a gate or an opening which he had left in that portion of the fence to enable her to get to a switch on the east side of the boxcar which was used in watering the horses. LeBlanc’s testimony as to these facts is supported by that of his son, Pierre LeBlanc, Jr.
Barbara King and Johnnie King, on the other hand, testified that LeBlanc did not inform Niesa of the fence at all that afternoon. They state that he pointed out to Johnnie the hogwire fence which was located north of the boxcar, and that Johnnie, in fact, then helped LeBlanc and his son complete that fence. Also, Barbara testified that LeBlanc then showed her the fence located south of the boxcar, point *286 ing- out to her the gate which he had arranged to provide access to the watering switch, but that Niesa was about 20 feet away while that was being done. According to their testimony at the trial, therefore, Niesa was not specifically informed of the fence, although both of her companions, Barbara and Johnnie, were informed of it, and Niesa was in the immediate vicinity while they was being done. The testimony' of these two witnesses is weakened considerably, however, by the fact that both gave prior written statements, in the presence of their father, in which both stated that prior to the accident LeBlanc specifically informed Niesa of the fact that the fence had been constructed, their prior written version of the facts being substantially as stated by defendant LeBlanc.
The injuries sustained by Niesa were of such a serious nature that she was unable to testify at the trial.
The trial judge, after carefully analyzing all of the evidence in his reasons for judgment, rejected the testimony of Barbara and Johnnie King, and concluded “that Mr. LeBlanc did, in fact, point out to the children the fence that he had constructed on the property that afternoon.” The trial judge’s findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight on appeal, and will not be disturbed unless found to be clearly erroneous. Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955); Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437 (1948); Barnes v. LeBlanc, 207 La. 989, 22 So.2d 404 (1945); and Williams v. Louisiana Ry. & Navigation Co., 121 La. 438, 46 So. 528 (1908).
We think the evidence supports the conclusions reached by the trial judge, and accordingly we find, as he did, that the fence was specifically pointed out to Niesa before the accident occurred, that she knew that the fence was there, and that LeBlanc was not negligent in failing to inform her of that fact.
Plaintiff contends alternatively that defendant’s minor son, Pierre LeBlanc, Jr., was negligent in causing Niesa’s horse to run away with her and that defendant is liable for the damages caused by the negligent acts of his son. The evidence shows that immediately before the accident occurred Niesa was riding her horse and young LeBlanc was riding his in the western part of the pasture. Plaintiff contends that after the riders turned to ride back in an easterly direction, young LeBlanc caused the horse he was riding to gallop at a very fast rate of speed and then to overtake and pass Niesa’s horse. This, it is argued, caused Niesa’s horse to become excited, to increase its speed and eventually to run away with her. Plaintiff contends that it is common knowledge, and was known to young LeBlanc, that a horse will run when overtaken and passed by another horse, and that LeBlanc knew that his actions in causing his horse to pass Niesa would cause the latter’s horse to run away. The trial judge found no merit to this argument, and he concluded that there was no negligence on the part of young LeBlanc.
Johnnie King had left the pasture before the accident occurred, so the only eyewitnesses to it who testified were Barbara King, Mr. LeBlanc and his son, Pierre. Barbara testified that Pierre raced his horse past Niesa just before the latter’s horse ran away with her, while young LeBlanc denied that he at any time caused his horse to overtake and pass the one being ridden by Niesa. He states that after they had started back to the eastern part of the pasture Niesa suggested that they go a little faster, and that in response to that suggestion both horses increased their gaits. He maintains emphatically, however, that his horse remained behind Niesa’s mount during tha entire time, and that her horse continued to go faster leaving him “a ways behind her.” The senior LeBlanc saw Niesa’s horse running away with her about 200 feet before it reached the point where the accident occurred, but he testified that he did not notice his son’s horse at all from that time *287 until the accident occurred. It seems to us that he would have noticed his son’s horse at that time if the two horses, in fact, were racing or if the LeBlanc horse was close enough to excite the Martin horse and cause it to run away.
The evidence shows that Niesa had lost complete control of her horse by the time it reached a point about 200 feet from the newly constructed fence. She had dropped the reins and was merely holding on to the pommel of the saddle with both hands while the horse traveled that distance. Other than calling “whoa” about twice, Niesa apparently did not, or was unable to, make any other attempt to bring her horse under control during at least the last 200 feet of that ride.
Plaintiff testified that his daughter, Niesa, had had considerable experience in riding horses, and that the horse which she was riding on that occasion was gentle, that the children had made sort of a pet out of her, and that “every child around the neighborhood who wanted to ride her had ridden her.” Under these circumstances we think it illogical to conclude that young LeBlanc, or anyone else, should have anticipated that Niesa’s horse would run away with her or that she would not be able to control the horse, even if the actions of young LeBlanc did cause the Martin horse to become excited and to increase its gait.
 In our opinion the evidence fails to establish that LeBlanc’s son overtook and passed Niesa shortly before the accident occurred or that he in any way caused Niesa’s horse to run away with her. The sole proximate cause of the accident, we think, was Niesa’s failure to keep her horse under control at and immediately prior to the time the accident occurred. We agree with the trial judge, therefore, that there is no merit to the alternative position taken by plaintiff.
Although this was a most tragic accident, and we genuinely sympathize with plaintiff and his daughter, we think the trial judge correctly concluded that LeBlanc and his son were free from negligence, and accordingly, that plaintiff is not entitled to recover from defendants.
In view of our conclusion that neither the defendant nor his son was negligent, it is not necessary for us to consider the special defenses of contributory negligence and assumption of risk which were urged by defendants.
For the reasons herein set out, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.