317 So.2d 256 (1975)
AMERICAN SECURITY INSURANCE COMPANY, Plaintiff-Appellee,
v.
GRIFFITH'S AIR CONDITIONING et al., Defendants-Appellants.
No. 5052.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
Rehearings Denied August 28, 1975.
Writs Refused October 24, 1975.
*258 Scofield, Bergstedt & Gerard by Robert L. Hackett, Lake Charles, for defendant-appellee-appellant.
Pugh, Boudreaux & Gachassin by Nicholas Gashassin, Jr., Lafayette, for defendant-appellant-appellee.
Brame, Bergstedt & Brame by Joe A. Brame, Lake Charles, for plaintiff-appellee.
Before HOOD, CULPEPPER and WATSON, JJ.
WATSON, Judge.
This is a subrogation claim by plaintiff, American Security Insurance Company, against defendants, Steve and Shirley Griffith, doing business as Griffith's Air Conditioning,[1] and Fedders Corporation, for a fire loss paid to Mrs. Edna Porteau as a result of a fire demolishing her residence. A third party demand was filed on behalf of Griffith against Fedders, contending that Fedders would be liable to Griffith for any sum for which Griffith was cast.
The trial court gave judgment in favor of plaintiff and against defendants, jointly and in solido, in the amount of $22,925.00 and this appeal by both defendants resulted. There is no controversy as to the amount of the loss, but defendants vigorously contest their liability.
There are two decisive issues to be resolved, and these are: (1) did defendants' negligence cause the fire? and (2) did plaintiff's concealment or destruction of certain evidence relieve defendants of liability?
The trial court has accurately and succinctly stated the basic facts of the case and we will quote these findings with approval:
"The evidence preponderates that Mrs. Edna Porteau moved into her newly constructed home the last week of October, 1972. This was a frame house constructed by James Porteau, her son, who was a building contractor. The house consisted of a carport, utility room, kitchen, living room, three bedrooms and a bath. Griffith's Air Conditioning Service installed a Fedders central heating and air conditioning unit in a small closet near the center of the home with a thermostat control in the hallway (See D-1). The unit was heated by gas and the controlled air was discharged to the rooms through duct work located in the attic.
"After Mrs. Porteau moved into the house, she testified that she had trouble getting the heating system to function properly. She stated that when the heater would ignite, it would do so with a loud noise and then emit a `pop and snap' sound. She called Griffith's Air Conditioning and reported the complaint. Two service calls were made by Griffith's men. She stated that the operation of the heater continued about the same after the calls. She testified that the noise of the heater was such that she turned it off at night as it would keep the family awake. Mrs. Porteau's sister, Mrs. Parker, who lived next door, and a son, Frank Porteau, corroborated this testimony.
"On the morning of December 28, 1972, Mrs. Porteau left the home to spend the day in Reeves, Louisiana. One son, Frank, went next door to Mrs. Parker's house to stay with her and help her with her invalid husband. Before leaving, Mrs. Porteau turned the thermostat down to 60. At 5:30 P.M. Frank Porteau, 14 years of age, and who was next door at Mrs. Parker's home, went to the Porteau home to get a tape player. As he entered the house through the kitchen, he heard the telephone ringing in a bedroom. (Exhibit D-1, Bedroom #2).

*259 As he left the kitchen he started down the hall to answer the phone and as he went by the thermostat he turned it up to 80 or 85 degrees. He went into the bedroom to answer the phone. The caller asked for a certain telephone number. He left the phone to get the number as requested. As he entered the hall he found it `full of smoke'. He went down the hall and upon looking into a bedroom saw flames on the wall and door of the room. He ran out of the house and across the street to call the fire department. As he came out of that house he saw the window of the flaming bedroom blow out. He estimated that he was in the house approximately two minutes or less. The house was totally destroyed before the fire department arrived.
"Steve Griffith testified that he installed the unit on behalf of Griffith's Air Conditioning. He said he made two service calls after installation. He stated he recalled no complaints about the heater. He stated that his service calls were for the purpose of checking the air conditioning. He stated that he did check the heating unit however, and it was working satisfactorily. This Court concludes that Griffith was mistaken or told an untruth about the purpose of the service calls. These calls were made either in November or December of 1972. It is highly unlikely that air conditioning complaints would be filed during those months of the year. Furthermore, Mrs. Porteau nor her sons have any interest in the outcome of this suit. She has been paid for her loss.
"Defendants called an engineer who is employed by Fedders, Mr. Kizlowski. This engineer explained the principal features and mechanism of the heater and the tests applied by Fedders. He felt that a fire could not have started in the one and a half or two minute interval between the time the son turned the thermostat up and the time he saw the flames. He did state that it was possible to have a fire caused by a `roll out' of the gas from the heater but this would take more than two minutes to materialize.
"George Pappas, an expert for Shilstone Testing Laboratories, stated that the unit should have had more louver area on the door of the heater closet for intake. He stated that for the fire to burn through the wall from the heater area would take 10 to 15 minutes.
"The testimony of these experts that the heater could not have caused the fire is based primarily on the conclusion that the fire started after the son came into the house, turned the thermostat up, answered the phone, left the phone, saw flames and left. This took one and a half to two minutes. It must be noted that when Mrs. Porteau left that morning she had turned the thermostat down to 60 degrees but didn't turn the unit off. It was stipulated that the weather bureau in Lake Charles reported a temperature of 59 degrees at 4:00 P.M. and 57 degrees at 5:00 P.M. The heater, set on 60 degrees, could have activated itself before the boy came into the house." (TR. 91-94)
In addition to these facts found by the trial court, we note certain other facts reflected by the record upon which the trial court did not comment. As a whole, the record indicates considerable difficulty with the central heating unit, manufactured by Fedders and installed by Griffith, during the short period the house was occupied, that is, from the last week of October until December 28. For example, the contractor who built the house testified that it was very difficult to keep the pilot light ignited. The other witnesses, who testified for plaintiff but who were not interested in the outcome of the case, emphasized the noise made by the heating unit. They described it variously as sounding like firecrackers, popping, snapping, a locomotive popping, metal popping, or like someone beating on a piece of tin. Also, *260 the evidence in the record is convincing that the heating unit was installed by Griffith without louvers or other openings on the door to the closet. Steve Griffith testified that he was not aware that the installation book supplied by Fedders calls for such openings. The installation book filed in the record clearly requires two openings in the door. (See page 4 of D-3). Even the experts testifying on behalf of the defendants admitted that the provision of openings on the door to the heater closet would have been a better (meaning safer) installation.
As to the factual background on the issue concerning destruction of the evidence, we will note merely that both defendants complain that plaintiff authorized the removal of the burned heating unit from the premises following the fire. The record reflects that this was done following authorization by the representative of the insurance company some six weeks after the fire. The uncontradicted testimony of Thomas J. Rabalais, who adjusted the fire loss for plaintiff, is that he notified defendant Griffith of the subrogation claim by letter of January 11, 1973, about two weeks after the fire. This testimony is confirmed by a copy of the letter which appears in the record. Griffith admitted that on at least one occasion following the fire he personally went to the premises and saw the remains of the unit which he described as being burned and melted.
Likewise, Fedders has proved no intent or design by plaintiff to destroy or conceal the evidence; any complaint by Fedders would appear to be against Griffith. Therefore, we find no merit to the contention by defendants that plaintiff is precluded from recovery on this basis.
As to defendants' liability, we agree with the trial court that the applicable law, at least in part, is found in Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (La., 1972). The plaintiff's burden of proof and the evidentiary import of the doctrine of res ipsa loquitur are described in detail in Boudreaux. As we understand these rules, they are as follows:
First, the circumstantial evidence required in civil negligence cases need not negate all other possible causes of injury if the proof excludes other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that the harm was caused by the conduct of defendant.
Second, the doctrine of res ipsa loquitur (usually "the thing speaks for itself" and here meaning that the facts warrant an inference of negligence) sometimes applies as a rule of circumstantial evidence, obviating the necessity of proving just what negligent act caused the injury.
Third, the basic question to be decided is whether the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident.
And finally, Boudreaux concludes that this is simply another formulation of the burden of a plaintiff in a tort action to prove that, more probably than not, his injury was caused by the negligence of the defendant.
We have no difficulty in concluding, as did the trial court, that the fire originated in the central heating unit. A study of the record reflects that this is far and away the most plausible explanation of the occurrence. Then, applying the rules of Boudreaux, we believe that it is obvious that a properly designed and constructed unit, properly installed, would not cause a conflagration such as occurred here. The doctrine of res ipsa loquitur is properly applied.
We know that the door to the heating unit was not properly vented or louvered, but the evidence is not conclusive that this alone would cause a fire. It is not necessary, under Boudreaux, to isolate *261 the acts of negligence by defendant or defendants which caused the fire.
We find that the circumstances of this case are analogous, to those of Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704 (La., 1948) where it was held that the doctrine of res ipsa loquitur was properly applied to a situation where a gas-burning heater caused a fire. While the Plunkett heater had been installed only two days prior to the fire, and the heater in the instant case had been installed for two months, we find no basic distinction. Also, see Saunders v. Walker, 229 La. 426, 86 So.2d 89 (La., 1956).
As to the liability of Fedders, the doctrine of res ipsa loquitur is also applicable. This was a new unit; and by manufacturing and selling such a unit, Fedders impliedly warrants that it is safe and fit for its intended use. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., et al, 315 So.2d 660 (La., 1975). In our opinion, the responsibility of the manufacturer and that of the installer of complicated machinery using natural gas and electricity are tightly woven together. Where the evidence establishes that the new device, newly installed, caused a fire, both installer and manufacturer should be cast for damages unless one or both prove freedom from fault or one proves that the other was solely responsible.
The joinder of multiple defendants does not bar res ipsa loquitur. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La., 1973).
Fedders has not exonerated itself from negligence and liability; Griffith has not exonerated itself from negligence and liability. Neither has proved that it was the negligence of the other which was responsible for the fire. Therefore, we find as did the trial court that the defendants are liable in solido. The third party demand of Griffith against Fedders was properly denied.
The judgment of the trial court is affirmed and costs are taxed against appellants.
Affirmed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I am unable to agree with my colleagues that the doctrine of res ipsa loquitur is applicable.
First, I think plaintiff has failed to show that the fire was caused by the heating unit or that there was any connection at all between that unit and the fire. In my opinion, the overwhelming preponderance of the evidence establishes that the fire was not, and could not have been, caused by the heating unit under the circumstances shown here. Several other possible causes of the fire were shown, none of which related to the heating unit, and any one of which was a more probable cause than those suggested by plaintiff.
In order for plaintiff to invoke res ipsa loquitur against either the manufacturer or the installer of the heating unit, it must first establish that the fire was caused by that unit. It at least must show some causal relationship between the heater and the loss which plaintiff sustained. The mere fact that a fire started in a bedroom of the house does not justify a presumption that it was caused by the central heating unit, especially when the evidence shows that the heating unit had not been used that day and that there was no fire in the heating unit closet when the blaze was discovered in the bedroom. Since plaintiff has not established any connection between the heating unit and the fire, there can be no presumption of negligence on the part of either of the defendants, and plaintiff thus is not entitled to invoke res ipsa loquitur against either of them.
Second, assuming that the fire was caused by a defect in the manufacture or *262 installation of the heating unit, that fact does not justify a presumption that the manufacturer and the installer were negligent, thus invoking res ipsa loquitur against both of them.
In Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972), our Supreme Court said:
". . . On the other hand, application of the principle (res ipsa loquitur) is defeated if `an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence.' . . ."
In the instant suit, assuming that the heating unit caused the fire, it is as reasonable to infer that the cause of the loss was a defect in the manufacture of the unit as it is to presume that the fire resulted from the improper installation of that unit. It is not likely that the loss resulted from the joint negligence of both defendants. Res ipsa loquitur thus cannot be applied as against either defendant.
The majority cites McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973), as authority for its holding that the joinder of multiple defendants does not bar res ipsa loquitur. In McCann, plaintiff sued for injuries sustained by his minor son while the latter was being treated in a hospital. He joined as defendants the doctor and the hospital, and their insurers. The trial court sustained exceptions of no cause of action filed by the doctor and his insurer, and the sole issue presented on appeal was whether res ipsa loquitur could be applied against the doctor and his insurer. No issue was presented as to whether the doctrine could be applied against two alleged joint tort feasors, only one of which likely was negligent. In reversing the judgment of the trial court, the Supreme Court said:
". . . The rule applies when the facts shown suggest the negligence of the defendant as the most plausible explanation of the injury . . ." (Emphasis added).
I agree that res ipsa loquitur may be applied to two joint tort feasors if the circumstances are such that both of those defendants necessarily must be held to be liable if there is any liability at all. In my view, however, res ipsa loquitur should not be applied against two defendants where it would be as reasonable or as plausible to presume that one of them, and not the other, was negligent.
In this case, assuming that the fire was caused by the heating unit, it is "as reasonable" or "as plausible" to infer that the fire was caused by the negligence of Griffith as it is to presume that it was caused by the negligence of Fedders. And, it is as reasonable to presume that it was caused by Fedders as by Griffith. Under those circumstances, res ipsa loquitur should not be applied to either of the defendants.
The majority erred, I think, in applying the doctrine of res ipsa loquitur in this case, and in decreeing both defendants to be liable to plaintiff, in solido, when there admittedly has been no proof of negligence on the part of either of those parties, when no ground has been shown for a presumption of negligence as to either of them, and when in any event it is highly improbable that the fire could have been caused by the joint negligence of both the manufacturer and the installer.
Finally, I think res ipsa loquitur cannot be invoked here because plaintiff destroyed the heating unit after the fire and before defendants had an opportunity to examine it or to use it as evidence in the case. The heating unit, as it existed after the fire, was the most important piece of evidence in existence which would or might have shown whether there was a defect in that unit, or whether there was any causal relationship between that appliance and the fire. Plaintiff destroyed that evidence *263 within a few days after the fire occurred, before defendants examined it.
The majority justifies this action on the part of plaintiff by stating that the unit was not destroyed until "some six weeks after the fire," that plaintiff's adjuster notified defendant Griffith of the subrogation claim before the unit was destroyed, and that Griffith admitted that he went to the premises and saw the remains of the unit before it was removed. Their reasoning is that one of the defendants, Griffith, had an opportunity to see the unit before it was destroyed, and that both defendants thus are barred from claiming that that important evidence was concealed or destroyed by plaintiff. My understanding of the testimony is that the heating unit was removed within a week or ten days after the fire, long before defendants had any idea that a claim might be asserted against them. Griffith testified that he drove by the scene of the fire shortly after the house had burned, but that he remained in his car, that he did not examine the heating unit or any other part of the remains at that time, and that the next time he went to the scene the heating unit had been removed. In any event, Griffith did not get an opportunity to examine that unit, and the majority does not even suggest that Fedders had any such opportunity.
Plaintiff, after destroying the best evidence obtainable to explain whether the heating unit was defective or played a part in causing the fire, now takes the position that it has no evidence to establish the cause of the fire, that the explanation of the loss is exclusively within the knowledge of defendants, and that plaintiff thus is entitled to invoke res ipsa loquitur.
In Joyner v. Aetna Casualty & Surety Company, 259 La. 660, 251 So.2d 166 (1971), Justice Hamlin, in a concurring opinion, stated:
"I note that in Footnote No. 3 of the majority opinion, it is stated: `Unfortunately, Moorehead's employees, upon removing the broken fulcrum, had sent it to the city dump on the day of or the day after the accident. Therefore, this fulcrum could not be located when searched for three weeks after the accident.' This statement in the Footnote, in my view, is very important in resolving the issues in this case.
"Moorehead's employees were the Company's agents; Moorehead, through its employees, disposed of this vital evidence. It is my further view that Moorehead should have been more attentive to this accident. It leaps to the mind that this was crucial evidence upon which it could have built a defense in this case. Failing to preserve this evidence, it must bear the result of its own inattentiveness, negligence, laches, call it what one will . . . ."
In Simon v. Ford Motor Company, 282 So.2d 126 (La.1973), the Supreme Court expressed substantially the same views in the following language:
"Considering the heavy burden on Ferrington to exculpate himself from any fault, we are unable to say that the failure of himself and his insurer to preserve the defective ball joint, immediately claimed to be the cause of the accident and as a factor exculpating himself from negligence, is without consequence. See concurring opinion (Hamlin, J.) in Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166, 171 (1971). Ferrington removed the defective joint when he repaired his vehicle about three weeks after the accident, and he threw it away. By doing so, he deprived the person injured because of the vehicle defect of any opportunity to show the cause of the defect, as well as of an opportunity for himself to corroborate (if true) by objective evidence his own self-serving testimony of periodic lubrication."
In the instant suit, if plaintiff had not destroyed the heating unit and had been *264 able to establish by direct positive evidence a causal connection between that unit and the fire, then plaintiff may have been able to recover against one of the defendants, but certainly it could not have recovered against both of them. The majority, however, has reached what I consider to be the untenable conclusion that since plaintiff has destroyed the heater and has no evidence at all to show the cause of the fire, it can recover against both defendants, in solido. I cannot agree with that conclusion.
For these reasons, I feel that the trial court erred and that the judgment appealed from should be reversed.
I therefore, respectfully dissent.
NOTES
[1] For simplicity we will refer to this defendant(s) as "Griffith"; the precise legal status is not clear in the record and appears variously in the pleadings.