341 So.2d 614 (1977)
Travis G. HUNT and Annie Mae Hunt, Plaintiffs-Appellees,
v.
FORD MOTOR COMPANY, Defendant-Appellant.
No. 13113.
Court of Appeal of Louisiana, Second Circuit.
January 10, 1977.
*615 Lunn, Irion, Switzer, Johnson & Salley by James B. Gardner, Shreveport, for defendant-appellant.
Johnston, Thornton, Greer & Cage by James J. Thornton and L. Edwin Greer, Shreveport, for plaintiffs-appellees.
Before HALL, MARVIN and JONES, JJ.
HALL, Judge.
This products liability case arises out of a one car accident which occurred when the steering wheel of plaintiff's car allegedly froze, causing the car to run off the highway and overturn, resulting in severe injuries to plaintiff.
Plaintiffs, Mrs. Hunt and her husband, sued Ford Motor Company, manufacturer of the automobile, Buster Gant Ford, Inc. of Oil City, Louisiana, the dealer from whom the automobile was purchased, and Gant's insurer. Plaintiffs and Gant compromised their suit as the trial commenced. After trial, the jury returned a verdict against Ford Motor Company in favor of Mrs. Hunt for $100,000 and in favor of Mr. Hunt for $17,000. Answering a special interrogatory the jury also found Gant negligent, and, accordingly, the amount awarded plaintiffs against Ford was reduced by one-half in view of the earlier compromise with Gant in accordance with the rule established by Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3d Cir. 1964) and *616 approved by the Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
Ford appealed seeking to reverse the finding of liability on its part. Plaintiffs answered the appeal seeking reversal of the finding of negligence on the part of Gant and the consequent reduction of the amount awarded by the jury. Neither side questions the amount awarded by the jury, if there is liability.
For the reasons set forth in this opinion, we affirm the judgment of the district court.
The only evidence as to how the accident happened is the testimony of plaintiff herself, the testimony of the state trooper who investigated the accident, and the testimony of a witness who was driving near the scene but did not actually see the accident.
Mrs. Hunt, a 57 year old wife and mother of three, employed as a nurses aide at a hospital in Shreveport, testified she was on her way home from work about 4:00 on the afternoon of December 5, 1972. She was driving north on Highway 1, north of Shreveport, at a speed of 55-65 miles per hour. The posted speed limit at the time was 60 miles per hour. It was raining and the two-lane paved highway was wet. She pulled into the left lane to pass a car and as she did so she heard a loud "pop" in the steering column. When she got past the car she was passing and attempted to turn back into the right lane, the steering wheel "froze" and would not turn. This is the last thing she remembers although she was fairly certain she then applied her brakes.
The car left the highway on the left-hand side, struck a mailbox, a culvert, several small pine trees, overturned and came to rest against a stump, some 110 feet from where it left the highway.
E. L. Newland was driving south on Highway 1 near the scene of the accident. He saw a car in front of him put on his brakes and "fish tail" indicating the highway was slick. He then saw Mrs. Hunt's car in the ditch to his right, but did not actually see Mrs. Hunt's car leave the road. The driver of the car in front of him went to call for help and apparently did not return to the scene. Newland stopped to help.
Mrs. Hunt was pinned under the steering wheel of the car. Large clippers were used to cut the steering wheel so she could be removed from the automobile.
Mrs. Hunt was seriously injured, was in intensive care for about three weeks and was in the hospital for about nine months.
The car was a total loss and was sold to Willie Vedlitz, co-owner of Jake's Auto Parts, for $300-$400. The car remained in his salvage yard, but he sold some parts related to the steering mechanism including the steering linkage and steering gear.
This suit was filed December 3, 1973, alleging the accident was caused by a manufacturing defect in the steering mechanism. This was the first Ford or Gant knew about any claims against them. About a year after the accident, when Mrs. Hunt was well enough, she and Mr. Hunt looked at the car in the salvage yard and took some photographs. In February, 1974, at the instruction of Gant's attorney, the steering wheel and column (mast jacket) were removed from the wrecked automobile and sent to Herman Warkentin of Analysis Investigation Determination in Texas for examination. He disassembled the item and examined and photographed it. The disassembled steering column was later sent to Dr. William Tonn, an engineer and accident reconstruction expert in Houston, at the request of plaintiff's counsel. The mechanism was later examined by Mr. Hoppin with Ford in Michigan. The steering assembly was preserved and offered into evidence at the trial.
There was considerable testimony at the trial related to the history of the automobile since purchase and problems with the steering wheel. The Hunts purchased the 1972 LTD new from Gant in late 1971. Within a few days they noticed a "popping" noise in the steering wheel when turning. The steering wheel would also "hang up." They noticed greasy "shavings" in their laps *617 which came from the steering wheel or column.
The car was taken back to Gant. Employees of the dealer removed the steering wheel and looked at the column "from the top" inside the car. It was determined that the steering wheel was warped and that the shavings were caused by the steering wheel rubbing against the column. Gant installed a new steering wheela black one which was temporary until a proper matching red one could be obtained.
Mrs. Hunt continued to experience the same difficulties with the steering mechanism. She and various members of her family described some of the difficulties as "binding", "it would bind on you", "sluggish" and "hard to turn." The car was taken back to Gant and the new red steering wheel installed. Mrs. Hunt continued to have the same problems after this last installation.
Mrs. Hunt testified she took the car to Gant many times complaining about the steering and that sometimes they wrote up a ticket and other times they were too busy to work on it. Gant's records showed three occasions when a work ticket was written up, the two occasions mentioned above when the wheel was replaced twice, and a final occasion in August, 1972.
In August, Mrs. Hunt took the car to Gant again with the same complaints. Gant's work ticket shows "steering wheel hangs when turning only at times." At least two of Gant's people, including Mr. Gant, road tested the automobile and found nothing wrong. The steering wheel was not disassembled or inspected in any detail. No work was done and the car was returned to Mrs. Hunt.
A few days later, Mrs. Hunt wrote Ford Motor Company complaining that the steering wheel of her car was warped, that she could not get satisfaction from Gant, and asked if Ford could do anything about it. The letter was mailed to Ford in Michigan. A few days later Mrs. Hunt got the letter back in a Gant envelope. No response was made to her complaint, but a Gant employee wrote a note on the bottom of the letter asking Mrs. Hunt for payment of a $7 bill owed by her to Gant.
Mrs. Hunt then took the car to Claude DeBeaux Ford in Vivian. Some work was done on the car, but DeBeaux's records do not reveal anything related to the steering mechanism.
The accident occurred in December.
At the trial, Ford's experts, Warkentin and Hoppin, each testified they examined the steering wheel and column removed from the automobile, found some damage which in their opinion was impact damage, and found nothing which could have caused the steering wheel to "lock" or "freeze." Plaintiffs offered no expert testimony. A letter from Dr. Tonn, to whom plaintiff sent the steering mechanism for examination, was filed into evidence by both sides. The letter has little probative value, merely reciting that Tonn had examined the mechanism, that the shavings indicated a defect of some nature, and that the continuation of the same problems after the steering wheel was replaced indicated that Gant had failed to repair the original defect.
The Ford experts were not asked and did not testify whether the parts sold by the salvage yard related to the steering mechanism could have played a part in the alleged failure of the steering wheel to turn. The Ford experts' testimony was limited to their examination of the particular parts examined by them, in which they found no defect accounting for the alleged failure.
The jury obviously believed Mrs. Hunt's account of how the accident happened, that is, that the steering wheel froze and would not turn. Although Ford attacks her credibility on the basis of a number of alleged inconsistencies, all of the so-called inconsistencies are very minor and there is nothing of consequence in the evidence to cast doubt on her credibility. Although there are other reasonable possibilities of what caused the accident, such as excessive speed on a slick highway, the jury chose to believe Mrs. Hunt's explanation that the steering wheel would not turn. Her unequivocal testimony to that effect, *618 corroborated to some extent by the continued, seemingly related experiences of trouble with the steering from the time she bought the car to the time of the accident, constitutes sufficient evidence to support the jury's finding.
To recover against Ford, plaintiff has the burden of proving the existence of an unreasonably dangerous manufacturing defect and that the defect caused the accident. Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971); Simon v. Ford Motor Company, 282 So.2d 126 (La. 1973). Accepting the fact that the steering wheel froze or hung up, it necessarily follows that there was a defect in the steering mechanism which caused the failure. Considering the well-documented and supported evidence that the steering mechanism "popped", "binded", and "hung up" from the time the car was purchased, with no evidence of intervening causation by faulty repairs, other accidents, or the like, it is reasonable to conclude that an unreasonably dangerous defect related to difficulty in steering existed from the time of manufacture. It is not necessary for plaintiff to prove the precise nature of the defectonly that a manufacturing defect existed and that it caused the accident. While there is no expert testimony pinpointing the defect, the defendant's expert evidence, limited to an examination of the salvaged, damaged, incomplete steering mechanism does not negate the possibility of a defect which could have caused the steering wheel to hang up or freeze to a degree which could have caused Mrs. Hunt's car to run off the road while in a passing maneuver. The evidence of a manufacturing defect in the steering mechanism which caused the accident is sufficient to support the jury verdict.
Defendants cite numerous cases in which the manufacturer was held free from fault. These cases are distinguishable from the instant case. In most of these cases, the trier of fact found that the plaintiff failed to carry his burden of proof that a defect in the product caused the accident. In Elliott v. General Motors Corporation, 232 So.2d 907 (La.App. 2d Cir. 1970); Wishom v. Ford Motor Company, 256 So.2d 298 (La.App. 1st Cir. 1971); and Farmer v. Ford Motor Company, 316 So.2d 140 (La.App. 2d Cir. 1975), the finder of fact was persuaded by the testimony of defendant's experts that the accident did not occur in the manner plaintiff claimed. In the instant case, the trier of fact was persuaded by plaintiff's testimony and the corroborating circumstances rather than defendant's experts. Furthermore, defendant's experts were unable to make a complete examination of the steering mechanism in the instant case. In Grayson v. General Motors Corporation, 309 So.2d 373 (La.App. 2d Cir. 1975) writ refused 313 So.2d 602, eyewitnesses observed plaintiff apply her brakes immediately before she lost control of her car on a wet road, and the car functioned properly in extensive road tests after the accident. There were no eyewitnesses to Mrs. Hunt's accident, and the condition of the car did not permit road tests. Once again, the appellate court affirmed the lower court's findings of fact.
The cases of Simon v. Ford Motor Company, 282 So.2d 126 (La. 1973); Penton v. Budget Rent-A-Car of Louisiana, Inc., 304 So.2d 410 (La.App. 1st Cir. 1973) and West v. Hydro-Test, Inc., 196 So.2d 598 (La.App. 1st Cir. 1967), turned on plaintiff's failure to show that the defect causing the accident existed at the time of manufacture. In the instant case, steering complaints began soon after the car was purchased. The same problems persisted after the dealer changed the steering wheel. There is ample basis for the jury's finding that the original defect still existed at the time of and was the cause of plaintiff's accident.
Appellant argues that Mrs. Hunt was contributorily negligent in driving too fast under the prevailing weather conditions and with unsafe tires. Assuming arguendo that her contributory negligence could bar her claim against the manufacturer, the evidence is insufficient to support a finding of excess speed or other negligence on her part.
*619 Appellant also contends, alternatively, that Mrs. Hunt assumed the risk in driving her automobile at high speed knowing of the steering wheel problem. Mrs. Hunt, although aware of a problem with the steering, cannot be held to have been aware that the steering wheel would suddenly freeze or otherwise hang up to the extent that it would make it impossible to turn or control her car. She did not knowingly assume the risk of the problem with which she was confronted in this instance.
The next issue for consideration is the negligence of Gant and its consequent effect on the amount of the judgment against Ford.
A seller, as distinguished from a manufacturer, is not presumed to know the latent vices in the product he sells. Spillers v. Montgomery Ward, 294 So.2d 803 (La. 1974). A retail automobile dealer ordinarily owes a duty of reasonable inspection of automobiles sold by it according to standards in the industry, but is not required to disassemble the automobile or make minute inspection for latent defects. Barker v. Phoenix Insurance Company, 220 So.2d 720 (La.App. 2d Cir. 1969) and Drummond v. American Insurance Company, 159 So.2d 61 (La.App. 1st Cir. 1963).
A repairman ordinarily owes a duty of reasonable care, inspection and repair work when an automobile is brought to him for repairs. If a repairman does not meet this standard and his failure to reasonably inspect and repair, or warn of unrepaired defects, causes an accident, the repairman is held liable for the damages occasioned by his negligence. Block v. Fitts, 274 So.2d 811 (La.App. 3d Cir. 1973).
A new car dealer with repair facilities, however, should be under a higher duty to discover and correct defects in a new car sold by it when the purchaser reports such defects and presents the automobile for repair. The usual new car warranty system virtually forces the purchaser to look to the dealer for the discovery of and repair of defects when symptoms of defects appear soon after purchase. It is the dealer and not the manufacturer whom the purchaser must look to and rely on for correction of difficulties that manifest themselves shortly after purchase. When presented with complaints of difficulty with a vital component of an automobile such as steering control, the dealer-repairman owes a high duty to make all reasonable efforts to locate and correct the difficulty. The dealer is, in effect, given notice of the existence of a defect and although the precise nature of the defect may not be actually known, the dealer then may be presumed or considered as knowing the vice of the thing he has sold. To negative this presumption, it is incumbent on the dealer-repairman to show that he made all reasonable efforts to discover the precise nature of the defect and that the defect could not be discovered in spite of such efforts.
Where a manufacturing defect causes an accident and the dealer has prior notice of difficulties apparently relating to the defect with an opportunity to discover and correct the defect, in order to avoid liability for damages occasioned by the defect the dealer has the burden of showing he made reasonable and adequate efforts to discover the source of the difficulties and that the defect could not be discovered in spite of such efforts.
In this case, the difficulties with the steering were repeatedly called to the attention of the dealer. Beyond replacing the steering wheel and a cursory, visual inspection of the steering column, no efforts were made by the dealer to discover the source of the difficulties, which continued to exist. On the last occasion when the automobile was taken to the dealer with the same complaint of "hanging up" at times, the only inspection was a road test and no work was done. The steering mechanism was never disassembled or minutely inspected. Replacement of the steering wheel obviously did not solve the problem.
Our holding is that Gant must be considered as having knowledge of a steering vice or defect in the automobile, and having failed to make reasonable efforts *620 to ascertain the exact nature of the defect and to correct it, or to warn the purchaser of danger, Gant is solidarily liable with the manufacturer for the damages resulting from the accident caused by a defect in the steering mechanism. The jury's finding of fault on the part of Gant is supported by the evidence and the law.
The fault of Ford and Gant jointly contributed to causing the accident. Under Louisiana law, they are solidarily liable. Canter v. Koehring Company, supra. Under the rule of Harvey v. Travelers Insurance Company, supra, plaintiff having settled with one solidary obligor, the remaining solidary obligor is entitled to have its liability reduced by one-half. The judgment is correct in this respect.
For the reasons assigned, the judgment of the district court is affirmed at the cost of defendant-appellant, Ford Motor company.
Affirmed.