**Mary V. WINANS, Individually and as the Executrix of the Estate of L.H. Winans, et al., Plaintiffs-Appellants,**

v.

**ROCKWELL INTERNATIONAL CORP., et al., Defendants-Appellees.**

**Marguerite B. FUNAI, Individually and as the Special Administratrix of the Estate of Alfred Charles Funai, Sr., et al., Plaintiffs-Appellants,**

v.

**ROCKWELL INTERNATIONAL CORP., et al., Defendants-Appellees.**

No. 82–3057.

United States Court of Appeals, Fifth Circuit.

May 31, 1983.

Rehearing Denied Aug. 1, 1983.

1450

Robert S. Cooper, Jr., Baton Rouge, La., for plaintiffs-appellants.

A.R. Christovich, Jr., R.K. Christovich, New Orleans, La., for Rockwell.

F. Drake Lee, Jr., Shreveport, La., for Goodyear & Air Center.

Wm. A. Porteous, III, New Orleans, La., for General Elec.

Harry A. Johnson, Jr., Shreveport, La., for Atlantic Aviation.

S. Maurice Hicks, Jr., Shreveport, La., for Seaboard Tank.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Two pilots, attempting an emergency landing in a nine-year-old private jet after discovering an onboard fire, died when the plane exploded in mid-air. After hearing five days of testimony in the resulting wrongful death suit against the plane's manufacturers and some of its overhaulers and repairers, the jury returned a verdict for the defendants. The plaintiffs claim the trial court erred in instructing the jury on the standard of care applicable to the defendants, in not instructing the jury on *res ipsa loquitur,* and in several evidentiary rulings. We hold that the district court conducted the trial properly. The verdict demonstrates that the jury was not convinced those responsible for the tragedy were joined as defendants. It is not within our province to disturb that conclusion. For these reasons the judgment is affirmed.

I.

The plane was a Model 1121A Jet Commander aircraft manufactured in 1969 by Rockwell International Corporation. Its fuel system included an integral fuel tank within its wings and four flexible rubber fuel cells, manufactured by Goodyear Aerospace Corporation, above and below the wings in its fuselage. The jet engines were designed and manufactured by General Electric Company.

By 1976, when it was sold to Atlantic Aviation Corporation, the Jet Commander had developed a fuel leak. Atlantic inspected the right engine and hired Seaboard Tank Sealing Corporation to replace the flexible fuel cells and to repair the leak. In February and March 1977, Seaboard attempted unsuccessfully to repair the leak. The company also installed four new Goodyear flexible fuel cells. The Seaboard employee who supervised the cells' installation testified that one of them would not fit properly onto the Jet Commander. He testified that the cell had to be stretched and pulled in installation, and was "under a lot of tension."

In May 1977, the plane was flown to Air Center, Incorporated in Oklahoma City for further maintenance. Air Center's employees removed the left engine and sent it to General Electric for a mandatory factory overhaul. They also performed a scheduled maintenance inspection of the aircraft. This inspection included a check for fuel leaks, and none were discovered. While the Jet Commander was at Air Center, Seaboard employees removed one of the flexible fuel cells and examined it for leaks. Their tests indicated that the cell was not leaking, and they reinstalled it. The left engine developed oil leaks after its overhaul by General Electric.

In October 1977 the Jet Commander was sold to its sixth owner, John Cassidy. In January 1978, before Cassidy took possession of the aircraft, it was again taken to Air Center. Air Center employees effected minor repairs and gave the plane another scheduled maintenance inspection. The inspection again included an examination of the fuel system. No leaks were discovered.

Cassidy then took delivery of the aircraft. Within a few days, his employees noticed that the plane was again leaking fuel. They placed a drip pan under the plane to catch the leaking fuel; no repairs were attempted. One of the employees called Air Center to inform it of the leak. One of

Air Center's vice-presidents advised him that the leak was not a significant problem and advised against attempting to repair it at that time. On February 20, 1978, Air Center performed more minor repair work on the Jet Commander. No effort was made to repair the fuel leak.

On April 27, 1978, Cassidy's pilots Winans and Funai were flying the Jet Commander over Louisiana. A fire ignited in the right hand engine or the nacelle containing that engine. Winans and Funai attempted to extinguish the fire, then made an emergency descent to low altitude in an effort to land. Several witnesses observed the plane in low-altitude, low-speed flight. The Jet Commander was intact and flying on a level bearing, but it was trailing black smoke. Two witnesses observed that the plane was on fire. Others reported hearing a sound similar to that of an engine backfiring or a small explosion. Then the aircraft exploded in a fireball. Winans and Funai were killed.

The plaintiffs sued Rockwell, General Electric, Goodyear, Seaboard and Atlantic Aviation. Air Center was not joined as a defendant. Seaboard filed a third-party complaint against Air Center, but this action was later dismissed without prejudice. The jury returned a verdict for the defendants.

## II.

The trial court instructed the jury that there were two groups of defendants, with different theories of liability for each group. The Jet Commander's manufacturers, Rockwell, General Electric and Goodyear, were charged under a strict liability theory. The defendants that had performed repair work on the aircraft, Atlantic and Seaboard, were charged under a negligence theory. The district judge instructed the jury that General Electric was strictly liable only for defects existing in the plane's engines at the time they were manufactured. He refused to instruct that General Electric was also strictly liable for engine defects existing after General Electric overhauled the engines.[1] Plaintiffs claim this refusal was error.[2]

■ In Louisiana, an individual "who without fault on his part sustains an injury caused by a defect in the design, composition or manufacture" of a product rendering it "unreasonably dangerous to normal use" may recover from the product's manufacturer without proof of negligence.[3] Louisiana courts have so far applied this strict-liability doctrine only to manufacturers.[4] In undertaking the overhaul of the Jet Commander's engines, however, General Electric acted not as a manufacturer but as a repairer of the engines.

■ For a number of reasons, we conclude that Louisiana would not impose strict liability on those who merely provide repairs. First, that is the position taken by the majority of other jurisdictions to con-

1. During their deliberations, the jury sent a note to the judge asking why General Electric was not included in the "repairer" group, charged with negligence, for the overhaul of the engines. The judge responded that the case against General Electric was based solely on strict liability. It was only after this exchange that the plaintiffs asked the court to charge the jury that General Electric could be liable for negligently overhauling the engines. The district judge refused. In his order denying the motion for a new trial, the judge explained that his refusal was based not only on the tardiness of the request but also on the lack of evidence as to General Electric's negligence. In any event, the court's refusal to give a negligence instruction with respect to General Electric is not challenged on appeal.

2. Louisiana substantive law applies in this diversity-based products liability suit. *See Scott v. White Trucks,* 699 F.2d 714, 719 (5th Cir. 1983).

3. *Scott v. White Trucks,* 699 F.2d at 716 (quoting *Weber v. Fidelity & Cas. Ins. Co.,* 259 La. 599, 602, 250 So.2d 754, 755 (1971)).

4. "At the present state of Louisiana law, only the manufacturer is liable under the *Weber* version of strict liability in tort. Aside from recovery under some theory of contractual warranty, nonmanufacturer sellers and others involved in product distribution are liable only on a showing of negligence." Robertson, *Manufacturers' Liability for Defective Products in Louisiana Law,* 50 Tul.L.Rev. 50, 71 (1975) (footnotes omitted).

sider the question.[5] Second, Louisiana products liability jurisprudence does not easily accommodate the rationale underlying the minority view. Jurisdictions imposing strict liability on repairers do so because the repairers are viewed as "sellers" within the meaning of the Restatement (Second) of Torts § 402A (1965).[6] Louisiana has, however, adopted a narrow view of section 402A. It holds sellers liable for latent product defects only if they had knowledge of the defect at the time of sale.[7]

Finally, Louisiana case law suggests that repairers are not subject to strict liability. In *Hunt v. Ford Motor Co.,* 341 So.2d 614 (La.App.1977), the plaintiff had purchased an automobile through a dealer. The steering column was defective and the dealer replaced it. The steering wheel later locked while the car was in operation. An accident resulted and the Hunts sued both the manufacturer and the dealer. The Louisiana Court of Appeals held that the manufacturer was strictly liable for defects in the steering column. 341 So.2d at 618. The dealer who repaired the car, however, was held only to "a duty of reasonable care, inspection and repair work ...." *Id.* at 619. The Court noted that a repairer failing to meet this standard was subject to liability for "damages occasioned by his negligence." *Id.*

In *Williams v. Louisiana Machinery Co.,* 387 So.2d 8 (La.App.1980), the court defined the duty of care applied to repairers. Citing the Restatement (Second) of Torts § 404 (1965), the court held: "A repairer has a duty, arising in tort, to exercise reasonable care and skill in the design and repair of the object to be repaired commensurate with the risk of harm flowing from the normal use of that product." 387 So.2d at 12.

■ If General Electric failed to exercise reasonable care in overhauling the Jet Commander's engines, the plaintiffs had a negligence claim against the company. They failed, however, to base their suit on that theory. They were not entitled to an instruction on strict liability with respect to General Electric's work in overhauling the engines.[8]

### III.

■ The trial judge's instructions correctly defined the standard of care that Seaboard and Atlantic were required to use in repairing the Jet Commander. The jury was instructed that these defendants were required to use ordinary care, *i.e.,* reasonable care in proportion to the foreseeable danger.[9] Plaintiffs contend that the in-

---

5. *See Johnson v. William C. Ellis & Sons Iron Works,* 604 F.2d 950, 955 & n. 5 (5th Cir.1979) (collecting authorities).

6. *Id.* at 954 & n. 2.

7. *See Spillers v. Montgomery Ward & Co.,* 294 So.2d 803, 807 (La.1974); *Thomasson v. A.K. Durnin Chrysler-Plymouth, Inc.,* 399 So.2d 1205, 1208 (La.App.1981); *Harris v. Bardwell,* 373 So.2d 777, 780 (La.App.1979); *see generally* Robertson, *supra* note 4, at 72.

8. Plaintiffs cite *Various Underwriters at Lloyds v. Page Airmotive, Inc.,* 389 F.Supp. 831 (W.D. La.1975) and *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir.1974) for the proposition that a party who overhauls an airplane engine is subject to strict liability. As noted by the district court, those cases apparently involved much more drastic overhauls than that undertaken by General Electric in this case. To the extent that these cases do hold that repairers are subject to strict liability, we decline to follow them.

Our conclusion that Louisiana law does not impose strict liability for product defects on those who provide repairs also disposes of plaintiffs' claims that the district court erred in framing the special jury interrogatories, in using a "but for" standard of causation with respect to the repairers and in defining the term "manufacture" for the jury. As we understand plaintiffs' brief, each of these arguments is premised on the district court having erred with respect to General Electric's strict liability for overhauling the engines.

9. The trial judge instructed the jury:
 Because the amount of care exercised by a reasonably prudent person varies in proportion with the foreseeable danger involved, the amount of caution required will vary with the nature of what is being done, and all the surrounding circumstances shown by the evidence in the case. For example, you may consider the inherent danger in flying an airplane and the high risk of harm flowing from the normal use of an aircraft in considering the amount of care a reasonably prudent aircraft repairer would use.

struction should have stated that aircraft repairers are held to an extraordinary standard of care.

 Louisiana law does hold "to an extraordinary duty of care" those who "deal in or handle dangerous substances or agencies such as explosives, electricity, gas, firearms, combustibles and fireworks."[10] This principle, however, is inapplicable to the present case. The Jet Commander simply was not, itself, unusually explosive or combustible. As plaintiffs point out, it contained combustible jet fuel. The Louisiana rule, however, applies only to those working directly with the dangerous substance. Automobiles contain combustible gasoline, but the Louisiana courts have not held automobile mechanics to a standard of extraordinary care.[11] The trial court instructed the jury that it should consider the foreseeable dangers of airplane flight in defining ordinary care under the circumstances. This instruction properly defined the repair group's duty of care.[12]

### IV.

 The trial court did not err in refusing to instruct the jury on the doctrine of res ipsa loquitur. "Under Louisiana law, res ipsa loquitur is a rule of evidence which assists the plaintiff in carrying his burden of proof by supplying him with an inference of negligence in certain carefully defined circumstances."[13] As the Louisiana Supreme Court recently explained, "[t]he real test of applying res ipsa loquitur is: Do the facts of the controversy suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident?"[14] By this criterion, there are three reasons why res ipsa loquitur was not applicable: a defendant whose fault might have caused the injury was not joined; fault by the deceased was not negated; and, the defendants lacking control over the instrumentality, it was not shown that others who had control after them were fault-free.

That the case involved multiple defendants would not preclude the use of res ipsa loquitur. Lousiana has long recognized that the doctrine may be applied against several defendants. In Holliday v. Peden, 359 So.2d 640 (La.App.1978), for example, a tonsillectomy patient was injured when a surgical needle broke in his throat. The cause of the accident was not known, but the patient established that it resulted from negligence by one of the three defendants: the hospital, the surgeon or the needle's manufacturer. Id. at 643. The Louisiana Court of Appeals held res ipsa loquitur applicable to shift to the defendants the burden of disproving their negligence. Id.[15]

Cases like Holliday demonstrate that, if a plaintiff joins each of the possible tortfeasors, Louisiana courts will apply the doctrine even without evidence that each was negligent. The problem with applying res ipsa loquitur in this case was not that too many defendants were joined; it was that too few were joined.

10. *Royal Ins. Co. v. Fidelity & Cas. Co.*, 256 So.2d 352, 355 (La.App.1971); *accord Butler v. Atwood*, 420 So.2d 742 (La.App.1982) (gasoline); *Mobley v. Rego Co.*, 412 So.2d 1143 (La. App.1982) (liquified petroleum gas), *writs denied*, 414 So.2d 774, 1251 (La.1982); *Blackshere v. Kemper Ins. Co.*, 352 So.2d 275 (La. App.1977) (compressed oxygen).

11. *Cf. Hunt v. Ford Motor Co.*, 341 So.2d at 619 (automobile repairer held to duty of reasonable care).

12. *See Williams v. Louisiana Mach. Co.*, 387 So.2d at 12.

13. *Waterbury v. Byron Jackson, Inc.*, 576 F.2d 1095, 1099 (5th Cir.1978).

14. *Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1048 (La.1979); *accord Boudreaux v. American Ins. Co.*, 262 La. 721, 738, 264 So.2d 621, 627 (1972).

15. *Accord American Security Ins. Co. v. Griffiths Air Conditioning*, 317 So.2d 256 (La.App.) (heating unit caught fire, *res ipsa loquitur* applied against its manufacturer and its installer), *writs denied*, 320 So.2d 915, 916 (La.1975); *McCann v. Baton Rouge Gen. Hosp.*, 276 So.2d 259 (La.1973) (injury during surgery, doctrine applied against doctors and hospital); *Gerald v. Standard Oil Co.*, 204 La. 690, 16 So.2d 233 (1943) (explosion near filling station, doctrine applied against station owner, oil company and owner of advertising signs which may have ignited gasoline).

When there is only one defendant, *res ipsa loquitur* is not applied unless the plaintiff shows that the defendant is the party who caused the injury. "Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." [16] By the same rationale, it cannot be applied to a group of defendants unless that group includes all whose fault might have caused the injury. In this case, the plaintiffs did not join Air Center as a defendant. Air Center performed almost all of the maintenance for the Jet Commander in the year before it crashed. It conducted the last two scheduled maintenance inspections on the aircraft. It was consulted concerning the fuel leak, the only significant problem with the plane that was identified at trial, and it advised against attempting to repair it.

The evidence at trial did not identify who was responsible for the accident. Except for the fuel leak, no significant defects or acts of negligence were shown. On the record, therefore, it is as likely that Air Center's negligence in inspecting and maintaining the plane caused the accident as it is that any of the joined defendants were responsible. In addition, *res ipsa loquitur* is not applicable in Louisiana unless the likelihood of fault by the injured party is negated. The plaintiffs did not show that pilot error did not contribute to the accident.

Finally, the plane was not in the control of the defendants at the time of the accident. The general Louisiana rule is that *res ipsa loquitur* applies only when the instrumentality causing the accident is within the control of the defendants.[17] As plaintiffs point out, control is not always an essential element for applying the doctrine. In *Plunkett v. United Electrical Service,* 214 La. 145, 36 So.2d 704 (1948), the court noted that *res ipsa loquitur* had been applied in cases in which the element of control was absent. The court also explained, however, that, "Important ... in actions of this class is that the plaintiff prove freedom of fault on the part of all through whose hands the instrumentality passed after it left the defendant...." *Id.* at 159, 36 So.2d at 709.[18] Plaintiffs did not prove that Air Center was free from fault. The aircraft was in Air Center's control, however, after it left the care of the joined defendants. Moreover, nothing in the record indicates that the pilots were free from fault with respect to the accident. It may be true, as asserted in plaintiffs' brief, that the pilots could not have caused or contributed to the accident. Nothing in the record, however, demonstrates this fact, and we cannot simply assume it. Because they failed to show the required freedom from fault by those who controlled the Jet Commander after the defendants, the plaintiffs failed to bring their case within the exception they seek to invoke. *Res ipsa loquitur* was, therefore, inapplicable to the case on this ground as well.[19]

16. *Walker v. Union Oil Mill, Inc.,* 369 So.2d 1043, 1048 (La.1979); *accord Holman v. Reliance Ins. Co.,* 414 So.2d 1298, 1304 (La.App.), *writs denied,* 420 So.2d 164 (La.1982); *White v. C.F. Industries,* 411 So.2d 511, 516–17 (La. App.), *writ denied,* 413 So.2d 509 (La.1982); *Toussant v. Guice,* 414 So.2d 850, 854 (La.App. 1982); *Guillory v. Buller,* 398 So.2d 43, 47 (La. App.1981).

17. *Waterbury v. Byron Jackson, Inc.,* 576 F.2d 1095, 1099 (5th Cir.1978); *Hudgens v. Interstate Battery Co.,* 393 So.2d 940, 944 (La.App. 1981); *J.C. Trahan Contractor, Inc. v. Cockrell,* 225 So.2d 599, 606 (La.App.), *writs denied,* 254 La. 922, 228 So.2d 482 (1969).

18. *Accord Lescale v. Louisiana Coca-Cola Bottling Co.,* 422 So.2d 241, 242 (La.App.1982);

*Aetna Cas. & Sur. Co. v. Rothman,* 331 So.2d 81, 85 (La.App.1976).

19. We note a final problem with applying the doctrine in this case. *Res ipsa loquitur* is usually applied to prove negligence. Rockwell, General Electric and Goodyear, however, were not proceeded against on a negligence theory. It is not entirely clear that the doctrine may be used in strict liability cases. *See* J. Beasley, Products Liability and the Unreasonably Dangerous Requirement 343–368 (1981). *But see Lescale v. Louisiana Coca-Cola Bottling Co.,* 422 So.2d 241, 242 (La.App.1982). Moreover, plaintiffs' requested *res ipsa loquitur* instruction pertained only to negligence. Thus, plaintiffs asked that the doctrine be applied only against Seaboard and Atlantic, the parties

Louisiana cases have applied the doctrine of *res ipsa loquitur* to cases involving explosions. *See Maggio v. A.J. Toups Co.,* 153 So.2d 437, 440 (La.App.1963); *Horrell v. Gulf & Valley Cotton Oil Co.,* 15 La.App. 603, 131 So. 709 (1930). For the reasons set forth above, however, the doctrine was simply not applicable to the trial in this case.

### V.

■ Plaintiffs complain that the district judge used the word "defect" too often in his instructions. This claim is without merit. To prevail in a Louisiana products liability suit, the plaintiff must demonstrate that the product "was defective . . . and that [his] injuries were caused by reason of the defect."[20] The district judge cannot be faulted for using a word that properly expressed the plaintiffs' burden of proof.

### VI.

■ The trial court did not violate Fed. R.Civ.P. 51[21] by failing adequately to inform counsel of the action to be taken on plaintiffs' requested instructions prior to closing arguments. On November 10, 1981, prior to the closing arguments, the court advised counsel that it would charge the jury on a strict liability theory as to the manufacturers, Goodyear, General Electric and Rockwell, and on a negligence theory as to the repairers, Atlantic and Seaboard. The court explained that the strict liability charge would indicate that manufacturers were liable only for defects existing at the time of manufacture. Moreover, the judge advised that he would not give the plaintiffs' requested instructions on *res ipsa loquitur,* explosions, and negligence *per se,* nor the defendants' requested instructions on contributory negligence and assumption of the risk. The court fully complied with Rule 51.

### VII.

The remaining contentions merit only brief consideration. Plaintiffs claim that the district judge erred in refusing to admit a letter written by John Hite of Atlantic to John Michielli of Seaboard. The letter confirms a conversation in which Michielli told Hite that a minor leak still existed in the airplane and suggested that it might have resulted from a fault in one of the fuel cells installed by Seaboard in February 1977. The letter also indicates that Michielli told Hite that the cell seemed to be too small when installed, and that Seaboard employees had to "stretch and tug" to fit the cell onto the Jet Commander.

■ Any error in refusing to admit this letter was harmless. Plaintiff called John Michielli, Jr. during the trial. This witness testified that he supervised the replacement of the Jet Commander's fuel cells. He also testified to the difficulty encountered in fitting one of the fuel cells to the Jet Commander. He indicated that it was necessary to pull and stretch the fuel cell to fit the plane. Thus, the letter would have been only cumulative to the direct testimony of the man who supervised the installation of the fuel cell. Under these circumstances, any error in refusing to admit the letter was harmless.[22]

The trial court also excluded a handwritten document prepared by J. Banack of Atlantic. The document purports to be a list of defects in the Jet Commander called to Banack's attention during a phone call from one of Cassidy's pilots after the plane was repaired in February and March 1977. Plaintiffs claim the document was relevant because one of the defects listed is "fuel

---

charged under a negligence theory. To apply the doctrine against only two of the defendants would have been inappropriate. *See Walker v. Union Oil Mill,* 369 So.2d at 1048.

**20.** *Weber v. Fidelity & Cas. Ins. Co.,* 259 La. 599, 602, 250 So.2d 754, 755 (1971); *accord LoBrono v. Gene Ducote Volkswagen, Inc.,* 403 So.2d 723, 726 (La.1981); *LaBorde v. General Motors Corp.,* 422 So.2d 1333, 1335 (La.App. 1982).

**21.** That rule provides in relevant part: "The court shall inform counsel of its proposed action upon the [jury instruction] requests prior to their arguments to the jury. . . ."

**22.** *Collins v. Wayne Corp.,* 621 F.2d 777, 782 (5th Cir.1980).

leaks." Because the undated document was attached to an Atlantic work order dated August 19, 1977, plaintiffs claim it establishes that the Jet Commander was leaking fuel at that time.

■ The document purports only to recount what one of Cassidy's pilots told Banack. It is, therefore, inadmissible hearsay if offered to prove the truth of the pilot's claim that the plane was leaking fuel. *See* Fed.R.Evid. 801(c). Even if the trial court had committed error in refusing to admit the document, however, the error would have been harmless. It was undisputed that the plane was leaking fuel at least by January 1978. Plaintiffs do not explain how their case would have been materially aided by showing that the plane was leaking five months earlier than the date established by undisputed evidence.

■ The trial court did not err in allowing General Electric to read as cross-examination a portion of John Hite's deposition in which Hite indicated that he had no information indicating that the General Electric engines caused the crash, and thought they were "beautiful engines." Plaintiffs claim the evidence was irrelevant, prejudicial, unfair and inadmissible opinion testimony under Fed.R.Evid. 701. But the district court has broad discretion on the limits of cross-examination. We will disturb its judgment only in cases of clear abuse.[23] The admission of this portion of Hite's deposition was not such an abuse.

Finally, plaintiffs suggest that the district court erred in refusing to grant a new trial. This argument is simply a restatement of their contention that the trial court erred in the respects set forth in detail above. We have fully explained our reasons for rejecting these claims of error.

For these reasons, the judgment is AFFIRMED.

**23.** *United States v. Renton,* 700 F.2d 154, 159 (5th Cir.1983); *United States v. Ruppel,* 666 F.2d 261, 269 (5th Cir.), *cert. denied,* ——— U.S. ———, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982).