CIACCIO, Judge.
Plaintiffs were injured when the van in which they were traveling crashed into a concrete support for an overpass. Plaintiffs sued the seller of the van, Bohn Ford, Inc., and the manufacturer of the van, Ford Motor Co., alleging negligent repair and a vice or defect in the design or manufacture of the van. A claim in redhibition was also made. Kelsey-Hayes, maker of a braking system component, was made a third-party defendant.
After a jury trial, the trial judge granted a motion for a directed verdict in favor of Kelsey-Hayes. The jury found Bohn Ford and Ford Motor Co. liable in solido for plaintiffs’ injuries, and judgment was rendered accordingly. Only Ford Motor Co. has appealed. We reverse.
Plaintiff Alton Joseph, the driver of the van at the time of the crash, had purchased this 1980 model van from Bohn Ford on December 12, 1979. The van had been used by Bohn as a demonstrator model and had been driven 3,321 miles before plaintiff purchased it. Plaintiff used the van for business purposes, transporting small children to and from various schools.
Near the end of January, 1980, plaintiff experienced difficulty with the van’s braking system. He also noticed that the tires were worn and he decided to replace them. On February 1, 1980, after the van had been driven a total of 7,176 miles, plaintiff brought the van to Bohn Ford to be repaired. The brake linings on all four wheels were completely gone, so Bohn Ford replaced them.
Plaintiff testified that when the van was first returned to him it worked properly. Within two weeks, however, he again expe *187 rienced trouble with the brakes. On February 15, 1980, after the van had been driven an additional 1,252 miles, Bohn Ford again repaired the rear brake linings which had disintegrated and were completely gone. The front brakes apparently showed no unusual wear as they did not require repair.
On March 4, 1980, the crash occurred. The van had been driven 1,352 miles since the February 15th repair. Plaintiff testified that following that earlier repair the van again functioned properly, but that shortly before the crash he had heard the scraping noises which he had learned indicated trouble with the brakes.
In describing the accident plaintiff indicated that he applied the brakes in order to stop for a red light. The rear wheels seemed to grab or lock-up. The van spun around, the steering wheel spinning out of plaintiffs hands causing him to lose control of the vehicle. Traveling out of control the van then crashed into a support for an overpass.
Examination of the van following the crash revealed that the rear brake linings had disintegrated again. The front brakes were still in good shape. Closer examination and testing also revealed that the linings which had been on the rear wheels had been designed for use on passenger cars rather than on vans which are considered light trucks. Further, on one of the rear wheels the brake shoes, which are designated “primary” and “secondary”, had been installed in reversed positions. Repair records from Bohn Ford revealed that passenger car brake linings had been installed at the time of the February 1st repair also.
Louisiana law on products liability is expressed recently by our Supreme Court in Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985), as follows:
“... in order to recover from a manufacturer or supplier the plaintiff must prove (1) that the injury or damage resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and (3) that the condition existed at the time the product left the control of the manufacturer or supplier.” 462 So.2d at 168.
The plaintiff must prove each of these elements by a preponderance of the evidence.
Plaintiff proved that an accident occurred while he was driving the van. The evidence established that at the time of the accident the rear brakes had disintegrated, requiring repair for the third time during less than 10,000 miles of operation. The experts who testified at trial disagreed as to whether the condition of the brakes at the time of the crash caused the accident. The jury resolved this question of causation in favor of the plaintiff. That conclusion by the jury was not clearly wrong, and therefore will not be disturbed. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Concluding that the condition of the brakes at the time of the accident caused the accident, however, does not establish liability on the part of the manufacturer of the van. In Hunt v. Ford Motor Co., 341 So.2d 614 (La.App.2d Cir.1977) and Landry v. Bill Garrett Chevrolet, Inc., 443 So.2d 1139 (La.App. 4th Cir.1983), for example, the courts found that considering the evidence of steering problems from the time when the car was purchased, with no evidence of intervening causation by faulty repairs, other accidents or the like, it was reasonable to conclude that an unreasonably dangerous defect related to difficulty in steering existed from the time of manufacture. Considering the evidence in this case, we do not find sufficient support for the conclusion that an unreasonably dangerous defect related to the braking system more probably than not existed from the time of manufacture. Unlike the steering problems in Hunt and Landry, the brake problems experienced by plaintiff do not lead necessarily to the conclusion that the braking system was defective.
*188 The person who drove the van as a demonstrator model prior to its sale to plaintiff testified that he experienced no problems with the vehicle. Plaintiff then drove the van almost 4,000 miles before experiencing difficulty. At that time, examination of the van revealed that the front and rear brakes, as well as the tires were worn out. Repairs by Bohn Ford on this occasion were improper to the extent that passenger car brakes were installed on the rear wheels. Two weeks later the rear brakes were gone again, but the front brakes were fine and there is no mention of unusual tire wear. Repairs by Bóhn Ford were again improper because passenger car brakes were again installed on the rear wheels and on one wheel the positioning of the primary and secondary brake shoes was reversed. Two and a half weeks later the accident occurred. Again the rear brakes were gone, but the front brakes and the tires showed no unusual wear.
The evidence in the record suggests only two possible defect related explanations for the brake problems: a defective or contaminated proportioning valve or a defective or maladjusted parking brake mechanism. The expert called by plaintiff did not test the proportioning valve. He suggested only that a defective or contaminated valve might possibly create the problems plaintiff experienced. Experts called by defendants tested the valve; one expert placed the valve on a similar van and experienced no problems, and the other expert tested the valve on a testing device at the Kelsey-Hayes manufacturing plant and found it to be working properly. There was no evidence of any contamination which might have affected the functioning of the valve. In short, there was no evidence that the brake problems were related to any improper functioning of the proportioning valve. As mentioned in the beginning of this opinion, Kelsey-Hayes, the manufacturer of the proportioning valve, was dismissed by the trial judge on a motion for a directed verdict after the trial.
No expert found any problem with the parking brake mechanism. The experts indicated that if the parking brake were partially set or improperly adjusted, it could cause dragging of the rear brakes resulting in premature wear. Technical service bulletins from Ford Motor Co. highlighted the problems of maladjustment, cautioning its dealers’ servicemen to take note of a new design and not to improperly adjust the mechanism. Examination of the van after the accident revealed no problem with the adjustment of the parking brake. The record contains no evidence that the parking brake mechanism contained any defect in either design or manufacture. Nor is there any evidence that the mechanism was ever improperly adjusted.
The only evidence suggesting a defect in the braking system is that the brakes wore out on three occasions during less than 10,000 miles of use. Had the wear-outs all been similar with no evidence of intervening causation such as faulty repairs, this evidence may have carried plaintiffs’ burden because plaintiff need not prove the precise nature of the defect. Hunt v. Ford Motor Co., supra. Here the three occasions of brake problems were not similar. On the first occasion the brakes on all four wheels were gone and the tires were worn to the point of replacement. Whatever created this situation affected all four brakes and the tires. The evidence does not support that this situation resulted more probably than not from a defect rather than from heavy vehicle use or any other explanation.
The next two occasions of brake problems involved the rear brakes only, with wearing of the front brakes and tires noti-cably absent. Further, these two occasions were preeeeded by improper repairs. Here too, the evidence does not support that these situations resulted more probably than not from a defect rather than the improper repairs or any other explanation.
In short, the evidence does not preponderate in favor of concluding that the same cause created all these occasions of brake problems, or that all or any one occasion resulted from a defect traceable to the manufacturer. We conclude, therefore, *189 that plaintiffs did not satisfy their burden of proof as to the liability of the manufacturer, Ford Motor Co., and that the jury was in error in finding that a vice or defect existed in the van at the time that it left the manufacturer. Accordingly, the judgment against Ford Motor Co. is reversed. All costs of this appeal are assessed against appellee.
REVERSED.