NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-450

JAMES PALMISANO, ET AL.

VERSUS

COLVILLE PLUMBING & IRRIGATION,
INC., ET AL.

**********

ON APPLICATION FOR SUPERVISORY WRIT FROM
THE FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-6370
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Phyllis M. Keaty, Van H. Kyzar, and Candyce G. Perret,
Judges.

WRIT DENIED.

Michael J. Remondet, Jr.
Michael R. Guidry
Jeansonne & Remondet
P.O Box 91530
Lafayette, LA 70509
(337) 237-4370
COUNSEL FOR DEFENDANTS/APPLICANTS:
    Prejean and Sons Plumbing, LLC
    Colony Specialty Insurance Company

Gregory E. Tonore
P.O. Drawer 52603
Lafayette, LA 70505-2603
(337) 235-5401
COUNSEL FOR PLAINTIFFS/RESPONDENTS:
    James Palmisano
    Melissa Palmisano

Jack E. Truitt
Pamela S. Chehardy Croft
Peter M. Gahagan
Amber L. Mitchell
The Truitt Law Firm
149 North New Hampshire Street
Covington, LA 70433
(985) 327-5266
COUNSEL FOR DEFENDANT/RESPONDENT:
    Colville Plumbing & Irrigation, Inc.

**KYZAR, Judge.**

Prejean and Sons Plumbing, LLC ("Prejean"), and its insurer, Colony Specialty Insurance Company (referred to collectively as "Prejean"), filed an application for supervisory writs from a trial court judgment denying their motion for summary judgment in a personal injury action brought by plaintiffs, James and Melissa Palmisano. For the following reasons, we deny the writ application.

## DISCUSSION OF THE RECORD

This matter arises out of events which occurred when Mr. Palmisano, a former employee of Weatherford International, Inc., slipped and fell at work due to the presence of water in a hallway of Weatherford's office. In their petition, the plaintiffs alleged that water was leaking from the men's and women's toilets, which were located adjacent to the hallway where he fell, and that two plumbing companies, Prejean and Colville Plumbing & Irrigation, Inc. ("Colville"), were called out to repair this plumbing problem. The plaintiffs further alleged, among other claims, that the plumbing companies were negligent in failing to repair the septic tank; failing to take reasonable steps to warn Mr. Palmisano of the dangerous condition; failing to properly supervise, instruct and train its employees; and failing to take reasonable steps to maintain and ensure Mr. Palmisano's safety.

Thereafter, both defendants moved for summary judgment. Prejean argued that the plaintiffs would be unable to produce any factual support sufficient to show that Prejean owed a duty to Mr. Palmisano in view of the fact that it performed no repairs on the septic tank and that they would be unable to produce any evidence showing that the alleged water in the hallway was caused by any action of Prejean. Colville argued that the plaintiffs would be unable to produce any factual support sufficient to show that it owed a duty to Mr. Palmisano based

on the fact that it was not called out to Weatherford's office to fix the plumbing problem until the next day.

Following an April 10, 2017 hearing, the trial court denied both motions for summary judgment. As a result of this hearing, both defendants sought supervisory writs from this court. Colville's writ was denied. *Palmisano v. Colville Plumbing & Irrigation, Inc.*, 17-452 (La.App. 3 Cir. 8/18/17) (unpublished writ). Prejean now seeks supervisory review of the trial court's action in denying its motion for summary judgment.

## OPINION

Louisiana Code of Civil Procedure Article 966 provides that summary judgment procedure is favored and that it "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). It further provides that summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Although the burden of proof rests with the mover, if the mover will not bear the burden of proof at trial then he need only point out to the trial court "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Civ.Code art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

In *Smitko v. Gulf South Shrimp, Inc.*, 11-2566, pp. 7-8 (La. 7/2/12), 94 So.3d 750, 755, the supreme court set forth the governing law relative to summary judgment and our appellate standard of review thereof, as follows:

2

Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (*per curiam*)(citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-66.

In *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam) (alteration in original), the supreme court stated:

> We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

The plaintiffs seek damages for injuries Mr. Palmisano received as a result of the alleged negligence of the two plumbing companies pursuant to La.Civ. Code arts. 2315 and 2316. "Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case." *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195, p. 8 (La. 7/6/10), 41 So.3d 1119, 1125. Thus, in order to prove either defendant's liability, Mr. Palmisano must prove five separate elements: (1) that the defendant had a duty to conform its conduct to a

3

specific standard of care; (2) that the defendant failed to conform its conduct to the appropriate standard of care; (3) that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) that the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Pinsonneault v. Merchs. & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270.

"A repairer owes a duty, arising in tort, to exercise reasonable care and skill in the design and repair of the object to be repaired commensurate with the risk of harm flowing from the normal use of that product." *Williams v. La. Mach. Co., Inc.*, 387 So.2d 8, 12 (La.App. 3 Cir. 1980). Furthermore, a repairman owes a duty to third persons for the defects of an instrumentality if he "undertakes to repair" the defect in the instrumentality and then "represents to the owner that he has repaired the defect." *Block v. Fitts*, 274 So.2d 811, 811 (La.App. 3 Cir. 1973). In *Hunt v. Ford Motor Co.*, 341 So.2d 614, 619 (La.App. 2 Cir. 1977), the second circuit, citing *Block*, stated the following:

> A repairman ordinarily owes a duty of reasonable care, inspection and repair work when an automobile is brought to him for repairs. If a repairman does not meet this standard and his failure to reasonably inspect and repair, or warn of unrepaired defects, causes an accident, the repairman is held liable for the damages occasioned by his negligence.

Although both *Block* and *Hunt* dealt with auto mechanics, we find that it would apply to any type of repairman, including the plumber employed by Prejean.

The evidence introduced into the record in this matter was presented in the form of deposition and affidavit testimony. Walter Badeaux, Prejean's plumber, testified that he was dispatched to Weatherford on January 8, 2015, after Prejean texted him a copy of a work order. He stated that he arrived at the location after lunch and spoke to an employee, possibly male, at the front desk. He said that this

4

employee showed him the location of the restrooms and then showed him the clean out plug, which was located near the back door of the office. Mr. Badeaux testified that when he saw water and toilet paper coming out of the clean out plug, he told the employee that Prejean did not possess equipment to either unstop the main sewage line or pump the septic tank. He said that because the employee could see the water and toilet paper coming out of the clean out plug, he did not feel that it was necessary for him to give any further explanation about the problem. Mr. Badeaux testified that he did not give Weatherford an invoice as there was no charge since he did not perform any work. He stated that he was at Weatherford's office between thirty and forty-five minutes. He further stated that he did not see any water on the floor when he walked down the hall to the back door.

In his affidavit, Mr. Badeaux stated that he responded to a call at Weatherford in early January 2015. He stated that he was not in a position to see the water flow from the problem toilets after arriving at the location. He said that after an approximate fifteen-minute investigation, he noticed that the plumbing problem was caused by the septic tank and that he told Weatherford's employees that he neither worked on nor had the equipment to work on septic tanks. Mr. Badeaux stated that he never entered into a contract with Weatherford nor did he represent that he could fix the septic tank. He further stated that he never saw the overflowing toilet or the water on the floor because his investigation occurred at the back of the building where the septic tank was located. Finally, he stated that he did not write a work order or complete an invoice for Weatherford that day.

Debbie Fontenot, a Prejean employee, testified that Mr. Badeaux generated no paperwork for the Weatherford job on January 8, 2015. She stated that paperwork is usually not generated when he called and reported that he could not do a job. With regard to the call out ticket generated by Prejean on January 8,

5

2015, Ms. Fontenot testified that Elaine Breaux, another Prejean employee, wrote on the top of the ticket, "Tank pumped." She said that Ms. Breaux should have written, "Tank needs to be pumped." She explained that Prejean only handles plumbing issues located inside a house. She said that it can clean out a small line, but that it does not have the equipment to pump septic tanks.

Ms. Breaux testified that she wrote "Tank pumped" on the January 8, 2015 call-out ticket after she was informed by Mr. Badeaux that he told Weatherford that it needed to have its septic tank pumped. She stated that Prejean is not equipped to do that kind of work.

Mr. Palmisano testified that he was walking from the shop foreman's office back to his office when he slipped and fell due to a puddle of water, which was located in a hall next to the women's restroom. He stated that the puddle, which was between one-quarter to one-half inch deep, was clear, covered nearly the entire width of the hall, and was approximately three feet in length. Mr. Palmisano testified that Monica Brasseaux and Blair Prejean, co-workers, ran to assist him after hearing him fall. He said that Ms. Brasseaux told him, at that time, that a plumber from Colville's was there working on the septic tank. He stated that his supervisor, Chris Broussard, walked into the hall and told him that there was also water in the men's restroom and that a plumber was probably pumping a balloon into the sewer system. Mr. Palmisano testified that shortly after he fell, he saw a plumber cross in front of a window, walking from the area of the septic tank towards the parking lot. He stated that he then went to Mr. Broussard's office and filled out an accident report. Mr. Palmisano testified that the plumber was not wearing a shirt identifying him as working for Colville and that he did not see the plumber's truck parked outside.

6

Ms. Brasseaux, Weatherford's former administrator, testified that she called two plumbers on January 8, 2015. She stated that she first called Prejean and reported that two toilets were overflowing. She stated that Mr. Badeaux arrived between 9:00 and 10:30 a.m. She said that he was there for no longer than ten minutes before he came in and reported, "Sorry, There's nothing I can do here." Ms. Brasseaux testified that Mr. Badeaux did not mention anything about the clean out plug or a balloon and that he never told her the cause of the overflowing toilets. She stated that when she told Mr. Broussard that Prejean could not perform the work, he suggested that she call Colville because it had previously done work for Weatherford. Ms. Brasseaux testified that after she called Colville, its plumber arrived after 1:00 p.m. She stated that although she never saw the plumber arrive, he called to make sure that the back gate was unlocked. Ms. Brasseaux testified that she did not know the source of the water that caused Mr. Palmisano to fall. She further stated that she did not know why Mr. Palmisano's accident was related to a plumber being on site at Weatherford's office.

Mr. Prejean, a Weatherford employee, testified that he was sitting in his office when he heard Mr. Palmisano fall. He stated that when he reached the hall, Mr. Palmisano was standing and looking down at a puddle of water. Mr. Prejean stated that the puddle was approximately nine to twelve inches in diameter and was located in the middle of the floor. He stated that he never knew where the water had come from and that there was no water right in front of the door to the women's restroom.

Mr. Broussard, Weatherford's former distribution manager, prepared a typed account of Mr. Palmisano's accident on January 12, 2015. In the account, Mr. Broussard stated, "At the time of the incident, a plumber was on location outside

7

attempting to clear a clogged discharge line. The plumber put a bladder (balloon) in the line and it is speculated the bladder forced water back into the office area."

In his deposition, Mr. Broussard testified that two toilets were clogged up in the office on January 8, 2015, and that a plumber was on location attempting to fix the problem shortly before Mr. Palmisano's accident, which occurred at approximately 2:30 p.m. He stated that he spoke to the plumber outside, who informed him that he had unsuccessfully tried to clear the sewer line and now he was sticking a balloon into the line in an attempt to push out the source of the clog. Although Mr. Broussard could not recall what he did after speaking to the plumber, he said that he did remember that the plumber told him that the balloon failed to remove the clog in the sewer line.

Mr. Broussard testified that he was informed about Mr. Palmisano's accident a short time later, while he was in the shop. He stated that when he reached the hall, he saw Mr. Palmisano standing up, and he noticed a puddle of water in the middle of the hall, directly outside of the women's restroom. Mr. Broussard testified that no other water was on the floor of the women's restroom, and although he did not know the source of the water, he could not say for certain that it did not come from the women's restroom.

Mr. Broussard testified that he prepared his typed statement on the Monday, January 12, 2015, following the Thursday accident. He stated that he speculated in the report that the cause of the water was the plumber inserting the balloon into the line because the balloon, as it was filled with water, would expand both forwards and backwards, which could force water back into the already full toilet. However, Mr. Broussard admitted that he was not aware of both toilets overflowing after the balloon was inserted into the sewer line. He stated that he did not know who the plumber was employed by, nor could he recall if another plumber came out that

8

same day, or if he spoke to two plumbers on January 8, 2015. Mr. Broussard testified that the plumber he spoke to was a Caucasian, in his mid-forties, and was approximately five foot, eight inches tall. He further stated that he did not recall seeing toilet paper or water coming out of the clean out plug.

The dispatch tickets from Colville indicate that it was contacted by Weatherford on January 9, 2015, at 10:20 a.m. and that its plumber, Carl Wood, began working on the problem at 1:31 p.m., and was finished by 1:00 p.m. for a total work time of minus .22 minutes. However, a January 12, 2015 paid invoice from Colville indicates that Weatherford paid $300.00 for it to unstop the septic tank from the clean out plug. A January 28, 2015 dispatch ticket indicates that the same plumber was called out to Weatherford to perform the same job, for a total work time of 1.22 hours. These invoices further indicate that the same plumber was dispatched to two jobs on January 8, 2015, with the first job lasting from 12:30 p.m. to 4:30 p.m., and the second lasting from 5:00 p.m. to 6:00 p.m.

In denying both Prejean's and Colville's motions for summary judgment, the trial court stated:

> There's evidence that there was a plumber working at Weatherford at about the time that the plaintiff fell and the spill occurred. Your folks say that the your guys didn't even go out until the next day.
>
> . . . .
>
> But there's lots of evidence that no plumber came out on the day after Palmisano fell. And there's Mr. Remondet's client who says, "Hey, our guy showed up, took a look at it, it wasn't something we do, and he left."
>
> So there's really compelling testimony in Prejean's favor and in Colville's favor, but it was – There was a plumber there. And there's also evidence that Prejean and Colville were the only plumbers called that day by Ms. Brasseaux or whoever made the call.

9

So I don't know how I can conclude anything except that I have factual issues that would preclude a summary judgment for either of you, as compelling as some of the testimony in your favor is.

. . . .

And the other thing in your favor is that Colville says that they don't even do balloon tests; they use the jet to clean out the sewer lines. So, yes, there's plenty of compelling evidence that a jury may buy, but for me to grant your motion would require me to make credibility determinations that I'm not allowed to make at this stage of the game.

. . . .

. . . If the undisputed testimony was that Badeaux – Is that your plumber, Badeaux?

. . . .

– that Badeaux comes out and looks around, determines that it's cleaning the septic tank and they don't do that, and leaves, I don't think he would have had any obligation to alert them that there was water on the floor. It's open and obvious, and he wasn't engaged to do anything. And I don't think he had a duty, and duty is a question of law.

And I could make that determination and let them out, but there's other evidence indicating that there was a plumber there, and there's evidence that there were only two called, Prejean and Colville, and there's lots of evidence that it wasn't Colville who was doing the testing on the lines. I don't know how I'd do anything except leave you both in.

After performing a de novo review and reviewing all reasonable inferences in a light most favorable to the non-moving parties, we find that genuine issues of material fact exist in regards to whether Prejean's plumber made some effort to unclog Weatherford's sewer line on January 8, 2015. Although Mr. Badeaux claims that he did nothing, he admits that he arrived at Weatherford after lunch and that he spoke to a male Weatherford employee. Moreover, at one point, he claims that he was only on location fifteen minutes, but in his deposition he stated that he was there between thirty to forty minutes. Ms. Brasseaux testified that the plumber, who she thought worked for Colville, arrived after lunch. Mr. Broussard said that

10

he spoke to a plumber shortly before Mr. Palmisano's accident, which occurred after lunch, and that he did not recall speaking to more than one plumber that day. Moreover, according to Colville's dispatch tickets, its plumber, Mr. Wood, was employed on jobs for other clients on January 8, 2015, and it was not contacted by Weatherford concerning its plumbing problems until the next day, January 9, 2015. Furthermore, Prejean's dispatch ticket includes the notation, "Tank pumped." The trial court correctly noted that it was impermissible for it to make credibility determinations in deciding whether to grant the summary judgment. Accordingly, we find no error in the trial court's denial of Prejean's motion for summary judgment.

## DISPOSITION

For the reasons expressed herein, we deny the supervisory writ application of Prejean and Sons Plumbing, LLC. We assess all costs of this writ application to Prejean and Sons Plumbing, LLC.

**WRIT DENIED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.